[No. B160875. Second Dist., Div. Five. Mar. 3, 2004.]

SERGIO BRIZUELA, Plaintiff and Appellant, v.
CALFARM INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Law Offices of Jeff A. Lesser, Jeff A. Lesser; Esner & Chang, Stuart B. Esner and Andrew N. Chang for Plaintiff and Appellant.

Horvitz & Levy, David S. Ettinger, Nina E. Scholtz; Cannon & Nelms, Anthony L. Cannon and Derrick R. Sturm for Defendant and Respondent.

OPINION

**MOSK, J.**—Plaintiff and appellant Sergio Brizuela (Brizuela) appeals from the trial court's entry of summary judgment in favor of defendant and respondent CalFarm Insurance Company (CalFarm) in Brizuela's action against CalFarm for breach of contract and breach of the implied covenant of good faith and fair dealing. In affirming the judgment we hold, as a matter of law, that Brizuela violated the requirement of the insurance policy that he submit to an examination under oath; that the insurer could on that basis deny his claim without a showing of prejudice; that the availability of a deposition in litigation does not excuse his breach of the examination under oath requirement; that he had no valid bad faith claim; and that the court properly dismissed his action.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In July 1998, Brizuela entered escrow to purchase the El Toro de San Juan Market (El Toro). During escrow, Brizuela obtained a business owner's insurance policy from CalFarm Insurance Company (CalFarm) with limits of $500,000 on personal property. His wife, Karina Brizuela, was also an insured under the policy. Escrow closed on February 1, 1999. Just over one month later, on March 18, a fire destroyed the market. Brizuela hired a public adjuster to assist with his insurance claim.

Brizuela reported the loss to CalFarm, and CalFarm assigned one of its employees, Jack Hosford, to investigate the claim. The CalFarm investigator took recorded statements from Brizuela, his wife, and an El Toro employee. CalFarm subsequently learned that Brizuela had a felony conviction for receipt of stolen property; that Brizuela had been denied transfer of the alcohol license for El Toro; that beer and wine sales had accounted for a substantial portion of El Toro's business; that the purchase price for the

---

[1] In accordance with the summary judgment standard of review, we state the uncontradicted facts and the reasonable inferences that can be drawn from them. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001 [67 Cal.Rptr.2d 483].)

business was less than the amount Brizuela claimed; and that laboratory tests of the premises showed the presence of gasoline, an accelerant commonly used in arson fires.

CalFarm submitted a "Suspected Fraud Claim Referral" to the Department of Insurance and a request to the district attorney that criminal charges for arson and insurance fraud be filed against Brizuela. The Department of Insurance concluded there was insufficient information to support a criminal investigation, and the record contains no evidence that any criminal charges were filed against Brizuela. There is no indication in the record as to when Brizuela became aware of CalFarm's submissions to the Department of Insurance and district attorney.

On April 23, 1999, Brizuela's adjuster faxed CalFarm 33 pages of documents, including alarm company information, checks and checking account statements, and documents related to the purchase of the business. On May 27, 1999, CalFarm's counsel sent a letter to Brizuela's adjuster advising him that CalFarm had scheduled examinations under oath for Brizuela and Brizuela's wife on June 16, 1999, at that counsel's offices in Marina del Rey, California. The insurance policy CalFarm issued to Brizuela included a provision allowing CalFarm to "examine any insured under oath" in the event of a claim. In the May 27, 1999 letter, CalFarm's counsel asked that Brizuela produce certain documents by June 10, 1999, and confirm the examination date by June 11, 1999. Brizuela's adjuster responded by requesting copies of recorded statements that Brizuela and his wife had given to CalFarm shortly after reporting the claim. CalFarm's counsel denied this request.

Neither Brizuela nor his adjuster confirmed the proposed examination date, and on June 14, 1999, CalFarm's counsel offered to reschedule the examination and extend the time to produce documents. Brizuela's adjuster responded by reiterating the request for copies of the recorded statements, and CalFarm's counsel again denied the request.

On June 17, 1999, CalFarm's counsel wrote to Brizuela's adjuster stating: "We understand that you have counseled Mr. Brizuela to appear for the examination under oath without additional delay, but he has elected instead to draw out the claims investigation by insisting on receiving documentation which the Insurance Code clearly and unambiguously indicates he has no entitlement at this stage of the proceedings . . . . [¶] If Mr. Brizuela's final position on this matter is that he is unwilling to come to an examination under oath without first receipt and review of his recorded statement testimony and that of his wife, please confirm same to our offices, in writing, on or before June 24, 1999. At that time we will make our recommendations to CalFarm based upon the information contained in the claim file and the lack

of cooperation to date." The letter further stated, "If Mr. Brizuela withdraws this request and agrees to appear for the examination under oath, please submit available dates for his examination under oath and that of his wife."

Brizuela then retained counsel, who wrote to CalFarm's counsel on June 24, 1999, complaining at length about CalFarm's refusal to provide the Brizuelas' previously recorded statements. Brizuela's counsel wrote that "[t]he only purpose served by refusing to provide the transcripts would be the interest of the insurance carrier and its counsel to trick and confuse the insured to establish a basis for denial." Brizuela's counsel offered no dates for the examination under oath; instead he wrote that "[w]e will contact you directly to discuss time, dates and places for proceeding with the Examination Under Oath as demanded."

On July 6, 1999, CalFarm's counsel sent Brizuela's counsel a letter reiterating CalFarm's denial of Brizuela's request for the previously recorded statements and requesting proposed dates for the examination under oath. Brizuela's counsel responded by letter the next day accusing CalFarm of having "no interest to act fairly in this matter" by putting Brizuela "through an exercise to allow CalFarm to take advantage of its insured and subsequently deny the claim." But in that letter, Brizuela's counsel proposed no dates for the examination. On July 9, 1999, CalFarm's counsel sent another request for examination dates and asked Brizuela's counsel to respond by July 16, 1999. Brizuela's counsel then sent two letters, dated July 20, 1999, and July 27, 1999, suggesting no dates for the examination but instead asking CalFarm's counsel to provide dates.

Shortly thereafter, counsel for Brizuela and CalFarm had a telephone conversation during which CalFarm's counsel said he would be unavailable for three weeks in August 1999, and the parties discussed proposed dates for the examination. On August 18, 1999, CalFarm's counsel sent a letter to Brizuela's counsel stating, "[w]hen we last spoke, several weeks ago, several proposed dates for your client's examination under oath were exchanged: We have heard nothing from your offices since that time." CalFarm's counsel requested that "a date certain for the examination and the production of documents requested in our initial letter be supplied to our offices on or before the close of business on Wednesday, August 25, 1999," noting that CalFarm would reach a decision on the claim "based on the available information to date" if no examination under oath occurred. On August 20,

1999, Brizuela's counsel responded by stating that his client had been available during the first three weeks of August and that "[w]e will contact you with available dates now that we know you have surfaced from your Trial matter." There is no suggestion in this letter as to Brizuela's availability for an examination under oath at any particular date or period of time.

On October 5, 1999, Brizuela's counsel wrote another letter to CalFarm's counsel, criticizing CalFarm's conduct but offering no dates for the now long-delayed examination. Instead, Brizuela's counsel suggested that CalFarm's counsel "contact my office regarding proposed Examination Under Oath dates." Brizuela's counsel further advised CalFarm that he had a trial set to commence on November 10, 1999. CalFarm's counsel responded by letter dated October 20, 1999, again requesting documents and asking Brizuela's counsel to "respond to our office in writing with dates certain for the examination under oath of Mr. Brizuela and we will clear the dates with both the undersigned and Mr. Hosford's calendar." On November 4, 1999, Brizuela's counsel responded by letter stating he and his client had been available in October; that counsel was now unavailable because of the November 10, 1999 trial; and "when we have a clearer picture as to our Trial schedule, we will contact you for a date."

On November 15, 1999, Brizuela's counsel wrote CalFarm's counsel requesting proposed dates "immediately inasmuch as we are set to commence to Trial on December 13." There was no indication of the length of the trial. On November 24, 1999, CalFarm's counsel responded by noting that he had himself had "been involved in answering ready for trial and appearing for trial" and that he would continue to be so involved "into the new year." CalFarm's counsel then stated: "As a result, we have the following available dates for the completion of the examination under oath of Mr. Brizuela: The available dates include December 20, 21, 22, 23, 27 and 28." It was not until January 6, 2000, that Brizuela's counsel communicated his complaint that he received CalFarm's letter "after Thanksgiving" and determined that the proposed dates were "neither reasonable nor practical." The next day, Brizuela's counsel received a letter from CalFarm denying the claim. The letter stated, "Sergio and Karina Brizuela have failed to cooperate in the scheduling of an examination under oath. As such, this constitutes a breach of not only the contract provisions, but also of a condition precedent to coverage." CalFarm also reserved the right to assert other terms and provisions contained in the policy as necessary, "due to the insureds' refusal to cooperate and appear for their examinations under oath and to produce supporting documentation." Brizuela had never proposed a date for the examination under oath, and no examination ever occurred.

Brizuela sued CalFarm for breach of contract and for tortious bad faith breach of an insurance contract. CalFarm filed a motion for summary

judgment, and the trial court granted the motion. In so doing, the trial court concluded that Brizuela's attendance at an examination under oath requested by CalFarm was a condition precedent to obtaining benefits under the policy; that Brizuela had the burden of satisfying a condition precedent to the insurance contract before attempting to sue on the contract; that Brizuela was obligated to attend the examination under oath CalFarm had initially scheduled in June 1999; and that Brizuela's failure to attend the examination precluded his action on the contract. The trial court ruled that Brizuela had no valid contract claim against CalFarm and that absent a valid contract claim, Brizuela could not maintain a bad faith claim against CalFarm. Brizuela timely appealed.

## DISCUSSION

### A.  Standard of Review

█ Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

█ A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o)(2).) Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849.) If the plaintiff does not make such a showing, summary judgment in favor of the defendant is appropriate. In order to obtain a summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . . [T]he defendant need not himself conclusively negate any such element . . . ." (*Id.* at p. 853.)

On appeal from a summary judgment, an appellate court makes "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].)

## B. *The Breach of Contract Cause of Action*

### 1. *Policy Requirement of Examination Under Oath*

CalFarm's insurance policy issued to Brizuela imposed certain requirements on the insureds, including the duty to submit to an examination under oath. The policy also imposed upon the insureds the separate requirement to "[c]ooperate with us in the investigation or settlement of the claim."

■ An insured's compliance with a policy requirement to submit to an examination under oath is a prerequisite to the right to receive benefits under the policy. (*Hickman v. London Assurance Corp.* (1920) 184 Cal. 524, 534 [195 P. 45] (*Hickman*).) In *Hickman*, an insurer investigating a loss under a fire policy demanded that the claimant attend an examination under oath, as required by the claimant's policy. The claimant attended the examination, but refused to answer the insurer's questions, invoking his Fifth Amendment right against self-incrimination because of pending criminal charges against him for arson. At the examination, the claimant offered to comply with the demand for an examination under oath after the arson charge was dismissed, or at any time if the insurer would cause the charge to be dismissed. The court held that the claimant's refusal to submit to an examination was not justified and that by refusing to submit to an examination, the claimant forfeited the right to benefits under the policy: " 'If the insured cannot bring himself within the terms and conditions of the policy he cannot recover. The terms of the policy constitute the measure of the insurer's liability. If it appears that the contract has been violated, and thus terminated by the assured, he cannot recover. He seeks to recover by reason of a contract, and he must show that he has complied with such contract on his part.' " (*Hickman, supra,* 184 Cal. at p. 534; see also *California Fair Plan Association v. Superior Court* (2004) 115 Cal.App.4th 158 [8 Cal.Rptr.3d 746]; *Globe Indemnity Co. v. Superior Court* (1992) 6 Cal.App.4th 725 [8 Cal.Rptr.2d 251]; *Robinson v. National Auto, etc. Ins. Co.* (1955) 132 Cal.App.2d 709 [282 P.2d 930]; *West v. State Farm Fire & Casualty Co.* (9th Cir. 1988) 868 F.2d 348.)

### 2. *Insured Did Not Comply With Requirement For Examination Under Oath*

Brizuela contends he never "refused" to submit to an examination under oath. He does not dispute, however, that he failed to appear at the examination initially scheduled for June 16, 1999. Brizuela's only response was a request sent by his adjuster on June 16, 1999, for copies of recorded statements Brizuela and his wife had given CalFarm shortly after Brizuela made his claim.

■ After Brizuela failed to comply with CalFarm's initial demand for an examination under oath, it became incumbent upon him to fulfill the requirement of being examined "by offering to submit to such an examination at a later time." (*Bergeron v. Employers' Fire Ins. Co.* (1931) 115 Cal.App. 672, 676 [2 P.2d 453].) He did not submit, or agree to submit to an examination under oath, on any specific date after June 16, 1999. CalFarm "had done all that it was required to do to set in motion the policy provisions for an examination of the insured under oath." (*Ibid.*) Although CalFarm reiterated its demand numerous times thereafter by asking Brizuela to provide dates for the examination, Brizuela failed to do so.

Brizuela contends that there is a triable issue of fact as to whether CalFarm's conduct in scheduling the examination was unreasonable so as to excuse his failure to submit to an examination. (*Hickman, supra,* 184 Cal. at p. 533 ["right to demand the performance of the condition precedent must be exercised in a reasonable manner"]; *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 575–578 [108 Cal.Rptr. 480, 510 P.2d 1032] (*Gruenberg*).) ■ The reasonableness of an insurer's conduct in processing a claim may be a question of fact. But when the evidence is undisputed and only one reasonable inference can be drawn from the evidence, the issue of reasonableness is a question of law. (*West v. State Farm Fire & Casualty Co., supra,* 868 F.2d 348, 350 [applying California law and affirming summary judgment in favor of insurer that its demand for an examination under oath was reasonable as a matter of law]; *Globe Indemnity Co. v. Superior Court, supra,* 6 Cal.App.4th at p. 731 ["Reasonable minds cannot differ" in determining that insurer's delay was due to refusal of insured to submit to examination under oath]; see also *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 845 ["There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof"].)

Here, the facts are undisputed that Brizuela failed to attend an examination under oath scheduled by CalFarm in June 1999. Brizuela did not contend that illness or some other incapacity excused his attendance on June 16, 1999, nor did he object at that time on the ground that CalFarm's scheduling of the examination was unreasonable. (*Hickman, supra,* 184 Cal. at p. 533 [insured's claim that his nonattendance at examination under oath was excused because insurer did not exercise right to demand examination in a reasonable manner rejected because insured made no objection to reasonableness of time, place or mode of examination].) Brizuela neither submitted nor agreed to submit to an examination on any particular date at any time thereafter, notwithstanding CalFarm's repeated requests over a six-month period that

Brizuela make himself available for such an examination. Brizuela did not respond in a timely manner to CalFarm's proposal offering six alternative dates in December, 1999.

Brizuela complained at length about the alleged unreasonableness of CalFarm's conduct without ever agreeing to submit to examination on any date. CalFarm's refusal to provide Brizuela with copies of previously-recorded statements was not justification for his actions. It was not unreasonable for CalFarm to reject Brizuela's request for copies of his previously recorded statement. There is no authority for the proposition that an insurer is under a legal obligation to provide an insured with a copy of the insured's previously recorded statements taken before a civil action has been filed and discovery commenced. If an insured seeks the statement to refresh a recollection at an examination under oath, the insurer's refusal to provide the statement may affect the insured's ability to provide information at the examination. But that normally is the insurer's choice. Even if there might be circumstances when it might be unfair or unreasonable for an insurer to demand an examination under oath without complying with an insured's request for an earlier recorded statement, here, Brizuela has given no reason why CalFarm's refusal to provide the statement was unfair or unreasonable.

Brizuela's failure, six months after CalFarm's initial request for the examination, to propose any dates for an examination, to respond in a timely manner to CalFarm's proposed dates, and to submit to an examination constituted a refusal to submit to examination under oath. (*See, e.g., Rosenthal v. Prudential Property & Casualty Co.* (2d Cir. 1991) 928 F.2d 493 [applying New York law and granting summary judgment in favor of insurer after concluding that purported scheduling conflicts did not justify 13-month delay of examination under oath that included six adjournments]; *Gould Investors, L.P. v. General Ins. Co.* (S.D.N.Y. 1990) 737 F.Supp. 812 [applying New York law, insured's unexcused failure to attend examination under oath was material breach of policy; upon insured's unilateral cancellation of a scheduled examination, burden is on insured to offer alternative future date for the examination]; *Home Ins. Co. v. Olmstead* (Miss. 1978) 355 So.2d 310 [insured's refusal to submit to examination under oath as scheduled, and subsequent failure to offer to submit to examination for 16 months caused insured to forfeit rights under policy].)

Brizuela contends that what is in effect a forfeiture of policy benefits is too severe a sanction to impose for his failure to schedule an examination under oath during the six months following CalFarm's initial demand. He analogizes his inability to agree with CalFarm upon a date certain for the examination to a discovery dispute and claims that the trial court's imposition of the equivalent of terminating sanctions was inappropriate. This is not,

however, a discovery dispute, and the range of sanctions that may be imposed in discovery disputes is not available here. Both the terms of the policy and the relevant case authority make clear that a claim for policy benefits may be denied as a consequence of failing to submit to a policy condition for examination under oath. (*Hickman, supra,* 184 Cal. at p. 534; *California Fair Plan Association v. Superior Court, supra,* 115 Cal.App.4th at pp. 161–163; see also 13 Couch on Insurance (3d ed. 1999), § 196:23, pp. 196-31–196-32 ["Generally, in the absence of a reasonable excuse, when an insured fails to comply with the insurance policy provisions requiring an examination under oath and the production of documents, the breach generally results in a forfeiture of coverage, thereby relieving the insurer of its liability to pay, and provides the insurer an absolute defense to an action on the policy."].)

### 3. *No Showing of Prejudice Was Required*

■ Brizuela argues that CalFarm was not entitled to deny his claim based on the failure to cooperate in the scheduling of an examination under oath unless CalFarm demonstrated that it was prejudiced by that failure.[2] An insurer must demonstrate that it has been "substantially prejudiced" by an insured's breach of the contractual duty to cooperate in the investigation of a claim, when the insurer is asserting such breach as a defense to an action on the policy. (*Campbell v. Allstate Ins. Co.* (1963) 60 Cal.2d 303, 305 [32 Cal.Rptr. 827, 384 P.2d 155] (*Campbell*). There is no California authority, however, that requires an insurer to show prejudice before denying policy benefits to an insured who has violated a policy provision requiring submission to an examination under oath. The cases do provide that compliance with the policy requirement for an examination under oath is a condition precedent to any claim, and the refusal to submit to such an examination causes a forfeiture of any rights under the policy. (*Hickman, supra,* 184 Cal. at pp. 530–532; *Bergeron v. Employers' Fire Ins. Co., supra,* 115 Cal.App. at p. 675.)

■ In *Robinson v. National Auto, etc. Ins. Co., supra,* 132 Cal.App.2d 709, which involved the insured's breach of a policy provision requiring both the insured's cooperation and submission to an examination under oath, the court held that the insured's failure to submit to examination was a breach of both

---

[2] In asserting this position, Brizuela focuses upon language in CalFarm's January 7, 2000 letter denying the claim in which CalFarm states: "It is the determination of CalFarm Insurance Company that Sergio and Karina Brizuela have failed to *cooperate* in the scheduling of an examination under oath." (Italics added.) The letter also refers, however, to "the insureds' refusal to cooperate *and appear* for their examinations under oath." (Italics added.)

the duty to cooperate and the duty to submit to examination. Although not specifically discussed, the court required no showing of prejudice by the insurer. (See also *California Fair Plan Association v. Superior Court, supra,* 115 Cal.App.4th 158; *Globe Indemnity Co. v. Superior Court, supra,* 6 Cal.App.4th at p. 731 ["The right to require the insured to submit to an examination under oath concerning all proper subjects of inquiry is reasonable as a matter of law"].) The insurer is entitled to investigate fully and fairly the claims. If an examination under oath is reasonably required towards this end,[3] its denial would necessarily be prejudicial to the insurer. At no time did Brizuela contend that the requested examination under oath was not reasonably required for CalFarm's investigation of the claim.

*Campbell, supra,* 60 Cal.2d 303, is distinguishable from the instant case.[4] *Campbell* did not involve an examination under oath policy provision but rather a claim by a third party invoking a statutory right to recover on the insured's liability insurance policy after obtaining a judgment against the insured. In *Campbell,* the court said that "[a]n insurer may assert defenses based upon a breach by the insured of a condition of the policy such as a cooperation clause, but the breach cannot be a valid defense unless the insurer was substantially prejudiced thereby. . . . [¶] The burden of proving that a breach of a cooperation clause resulted in prejudice is on the insurer." (*Campbell, supra,* 60 Cal.2d at pp. 305–306.) There is a distinction, however, between a breach of a duty of cooperation and a breach of the duty to submit to an examination under oath. Lack of cooperation can be ascribed to many acts or omissions—some of significance and some trivial. It makes sense to require an insurer to demonstrate prejudice before denying a claim based on breach of the duty to cooperate because not every failure by an insured to cooperate should result in a forfeiture of policy benefits. In contrast, an insured's refusal to submit to an examination under oath generally does not involve the subjective evaluation that exists with regard to whether or not there was cooperation by the insured. Either the insured refused to submit to the examination under oath, or complied with the requirement for an examination under oath.

██ The purpose of the examination under oath is to enable the insurer to obtain the information necessary to process the claim: " 'As the facts with respect to the amount and circumstances of a loss are almost entirely within the sole knowledge of the insured, . . . it is necessary that it [the insurer] have

---

[3] As to possible instances of unreasonableness in connection with a demand for an examination under oath, see *Gruenberg, supra,* 9 Cal.3d at p. 566.

[4] Plaintiff also relies upon *Pruyn v. Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500 [42 Cal.Rptr.2d 295], which held that when an insurer wrongfully denies coverage or refuses to provide a defense, the insured may negotiate a settlement with a third party and the settlement would create a presumption in favor of the insured as to the existence and amount of the insured's liability. *Pruyn* has no relevance to the instant case.

some means of cross-examining, as it were, upon the written statement and proofs of the insured, for the purpose of getting at the exact facts before paying the sum claimed of it. Such considerations justify the provision . . . requiring the insured as often as demanded to submit to an examination under oath touching all matters material to the adjustment of the loss, and provisions of that character are held to be reasonable and valid.' " (*Hickman, supra,* 184 Cal. at pp. 529–530.) An insured's failure to comply with the policy requirement for examination under oath deprives the insurer of a means for obtaining information necessary to process the claim. The inability to obtain such information is prejudicial, absent extraordinary circumstances.

### 4. *The Availability of a Deposition in Litigation is Irrelevant*

Brizuela suggests that CalFarm's failure to take his pretrial deposition in the action excused his breach of the examination under oath requirement. CalFarm's election to forgo discovery in Brizuela's bad faith action did not excuse Brizuela's breach of the policy requirement. An examination under oath and a pretrial deposition "serve vastly different purposes." (*Goldman v. State Farm Fire Gen. Ins. Co.* (Fla. Dist. Ct. App. 1995) 660 So.2d 300, 305.) The purpose of an examination under oath is to obtain information as part of the insurer's investigation of the insured's claim rather than for the litigation. The procedures are also different, for an examination under oath is not subject to the Code of Civil Procedure, and the insured's counsel has no right to examine the insured. Also, unlike a deposition, in an examination under oath, the insured is obligated to volunteer relevant information. (*Ibid.*; see *Lentini Bros. Moving & Storage Co. v. New York Property Ins. Und. Assn.* (1980) 76 A.D.2d 759 [428 N.Y.S.2d 684, 687], affd. (1981) 53 N.Y.2d 835 [422 N.E.2d 819, 440 N.Y.S.2d 174] [insured's compliance with New York discovery procedures did not cure insured's contractual default in failing to appear at an examination].)

### C. *The Bad Faith Cause of Action*

Brizuela contends that even if the trial court properly found that Brizuela's refusal to submit to an examination under oath barred a breach of contract action, he should not have been precluded from pursuing a claim against CalFarm for a bad faith breach of the implied covenant of good faith and fair dealing. The gravamen of a claim for breach of the covenant of good faith and fair dealing, which sounds in both contract and tort, is the insurer's refusal, without proper cause, to compensate the insured for a loss covered by the policy. (*Hickman, supra.* at pp. 533–534; *Waters v. United Services Auto Assn.* (1996) 41 Cal.App.4th 1063, 1069–1070 [48 Cal.Rptr.2d 910].)

Brizuela cites *Gruenberg, supra,* 9 Cal.3d 566, as support for the proposition that he can maintain a bad faith action against CalFarm

notwithstanding his lack of a breach of contract claim. In *Gruenberg,* the insured alleged that the defendant insurers willfully and maliciously conspired to deprive him of benefits under fire insurance policies by encouraging the filing of criminal charges against him; falsely implying that he had a motive to commit arson; and, knowing that the insured would not appear for an examination scheduled during the pendency of criminal proceedings against him, use his failure to appear at an examination as a pretense for denying liability under the policies. The insured in *Gruenberg* refused to appear for an examination under oath scheduled by the insurers while criminal charges were pending, and the insurers denied the claim on that basis. When criminal charges ultimately were dismissed, the insured advised the insurers that he was prepared to submit to examination; however, the insurers reaffirmed their denial of the claim based on the insured's failure to appear for examination. The trial court dismissed the insured's complaint against the insurers for their allegedly bad faith conduct, concluding under *Hickman, supra,* 184 Cal. 524, that the insured's failure to appear for the examination under oath contravened the terms of the policy and prevented his recovery. The California Supreme Court reversed the judgment, stating as follows: "While it might be argued that defendants would be excused from their contractual duties (e.g., obligation to indemnify) if plaintiff breached his obligations under the policies, we do not think that plaintiff's alleged breach excuses defendants from their duty, implied by law, of good faith and fair dealing. In other words, the insurer's duty is unconditional and independent of the performance of plaintiff's contractual obligations." (*Gruenberg, supra,* 9 Cal.3d at p. 578.) The court went on to say: "We conclude, therefore, that the duty of good faith and fair dealing on the part of defendant insurance companies is an absolute one. At the same time, we do not say that the parties cannot define, by the terms of the contract, their respective obligations and duties. We say merely that no matter how those duties are stated, the nonperformance by one party of its contractual duties cannot excuse a breach of the duty of good faith and fair dealing by the other party while the contract between them is in effect and not rescinded." (*Ibid.*)

*Gruenberg, supra,* 9 Cal.3d 566, is distinguishable from the instant case because *Gruenberg* did not involve an insured's *unexcused* failure to attend an examination under oath. As the court in *Gruenberg* noted, "the allegations of the complaint demonstrate that plaintiff's failure to appear was induced by defendants' conduct, in breach of their duty of good faith and fair dealing. Therefore, plaintiff's obligation to appear may be seen as excused by defendants' alleged breach." (*Gruenberg, supra,* 9 Cal.3d at p. 578, fn. 9.) As discussed in part B.2., *ante,* Brizuela's failure to submit to examination under oath was not excused. Unlike *Gruenberg,* "this case does not involve allegations that the insurer rejected an insured's claim based on trumped up charges by the insurer." (*California Fair Plan Association v. Superior Court,*

*supra,* 115 Cal.App.4th at p. 166.) Another distinction between this case and *Gruenberg* is that instead of a summary judgment, *Gruenberg* dealt with a dismissal of the complaint following a demurrer. The court in *Gruenberg* underscored the significance of this procedural status by stating, "We emphasize that we are passing only upon the sufficiency of these allegations which of course must be sustained by proper proof." (*Gruenberg, supra,* 9 Cal.3d at pp. 575–576.) In contrast, the instant case involves a summary judgment based on the undisputed fact that Brizuela never agreed to submit to an examination under oath following his initial unexcused failure to appear.

■■■ Although there is language in *Gruenberg, supra,* 9 Cal.3d at page 578, that suggests that the existence of a bad faith claim may be independent of and untethered to the insurance contract, the *Gruenberg* court's holding is much narrower. The court held that "nonperformance" of a contractual duty—in that case an excused nonperformance (*id.* at fn. 9)—does not preclude a claim for a breach of the duty of good faith and fair dealing. And, more recently, in *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619], the California Supreme Court held that absent any potential for coverage under an insurance policy, there can be no breach of the implied covenant of good faith and fair dealing "because the covenant is based on the contractual relationship between the insured and the insurer." In so holding, the court in *Waller* expressly approved *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136 [271 Cal.Rptr. 246], in which the court granted summary judgment in favor of an insurer on a bad faith claim because the insured's breach of contract claims under the policy were time-barred: "As the *Love* court observed, its 'conclusion that a bad faith claim cannot be maintained unless policy benefits are due is in accord with the policy in which the duty of good faith is [firmly] rooted.' " (*Waller, supra,* 11 Cal.4th at p. 36.)

Some authorities have suggested hypothetical circumstances in which an insurance company might be liable for bad faith despite the insured's lack of a contract right to benefits under the insurance policy. (Ashley, Bad Faith Actions Liability and Damages (2d ed. 1997), § 5A:02, p. 5A-10 [insurer might be liable for bad faith if, instead of investigating a non-covered claim, insurer embarked on campaign to intimidate insured into settling]; see, e.g., *Murray v. State Farm Fire & Casualty Co.* (1990) 219 Cal.App.3d 58, 65–66 [268 Cal.Rptr. 33] [insurance company might be liable if it unreasonably delayed investigating an noncovered claim].) No such circumstances are

present here. The trial court properly granted summary judgment on the cause of action for breach of the implied covenant of good faith and fair dealing.

### D.  Dismissal of Brizuela's Action

Brizuela contends that the trial court should not have dismissed his action, but rather, pending the scheduling of the examination under oath, should have deferred or postponed a determination of the claim on the merits. Brizuela never submitted or agreed to submit to examination under oath. After six months of Brizuela's unfulfilled promises to provide dates certain for the examination, CalFarm was legally entitled to deny coverage, thereby precluding Brizuela's claim, and the trial court properly dismissed Brizuela's action.[5]

Brizuela argues that dismissal of his action was improper because his failure to appear for examination was not willful. Under New York law, summary judgment dismissing an insured's complaint because of the insured's failure to submit to examination under oath has been held to be inappropriate without affording the insured a last opportunity to comply, unless the insured's failure to appear was willful. (*See, e.g., 232 Broadway Corp. v. Calvert Ins. Co.* (1989) 149 A.D.2d 694 [540 N.Y.S.2d 324, 325]; *Rosenthal v. Prudential Property & Cas. Co.* (2d. Cir. 1991) 928 F.2d 493, 494–495; *Gould Investors, L.P. v. General Insurance Company of Trieste & Venice* (S.D.N.Y. 1990) 737 F.Supp. 812, 817.) There is no California authority allowing such an opportunity. [6] Even if the standard prescribed by New York law were applicable, Brizuela's conduct here could properly be deemed willful. When the insured's failure to fulfill his obligations under an insurance policy " 'is indicative of a pattern of non-co-operation [*sic*] for which no reasonable excuse for noncompliance has been proffered,' [citation] his conduct is properly deemed willful." (*Rosenthal v. Prudential Property & Casualty Co., supra,* 928 F.2d at pp. 494–495.) Brizuela's persistent failure to provide CalFarm with available dates for the examination under oath evidences a pattern of noncooperation. (*Id.* at p. 495 [insured's failure to appear deemed willful because purported "scheduling conflicts" could not justify 13 month delay of examination under oath].) The trial court properly dismissed Brizuela's action.

---

[5] *Globe Indemnity Co. v. Superior Court, supra,* 6 Cal.App.4th 725, upon which Brizuela relies, does not support his position. In that case, the court held that the insurer was entitled to summary judgment because it did not unreasonably delay processing the insured's claim in view of the insured's refusal to submit to an examination under oath.

[6] This is not to say that the trial court may not exercise its discretion under Code of Civil Procedure section 437c, subdivision (e).

## DISPOSITION

The judgment is affirmed. Each party shall bear his or its own costs.

Turner, P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 19, 2004. Kennard, J., was of the opinion that the petition should be granted.