Filed 12/15/15  Karamanoukian v. United Casualty Co. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KRIKOR KARAMANOUKIAN et al.,<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>UNITED FINANCIAL CASUALTY COMPANY,<br><br>  Defendant and Respondent. | B260353<br><br> (Los Angeles County Super. Ct.<br> No. BC526018) |

APPEAL from the judgment of the Superior Court of Los Angeles, William F. Fahey, Judge.  Affirmed.

Law Offices of Eric Bryan Seuthe & Associates and Eric Bryan Seuthe, for Plaintiffs and Appellants.

Law Office of Julia Azrael and John S. Cutris, for Defendant and Respondent.

_____

Plaintiffs and appellants Krikor and Alber Karamanoukian[1] appeal from a summary judgment in favor of defendant and respondent United Financial Casualty Company (Insurer) in this action for breach of contract. The Karamanoukians contend the judgment in their previous action for breach of the covenant of good faith and fair dealing does not bar the instant breach of contract action, even though both actions arise out of the same insurance claim. We disagree and affirm the summary judgment.

## FACTS AND PROCEDURAL HISTORY

**Underlying Facts**

Insurer issued a policy to Alber covering a 2010 Mercedes Benz E350. Under the policy, if the insured made a claim, Insurer was entitled to take statements, including examinations under oath (EUO), and the insured was required to answer all reasonable questions that the Insurer asked, as often as the Insurer reasonably required.

On November 1, 2011, Alber's son Krikor called Insurer to report damage to the car and spoke to adjustor Deanna Wong, who said the conversation was being recorded. Insurer's inspector examined the car at the repair shop. Because the damage was severe and similar to a prior loss, the inspector referred the claim to Insurer's Special Investigation Unit (SIU). SIU inspector Rich Hougardy inspected the car.

Hougardy spoke with Krikor to obtain details about where the car had been parked and arranged to meet with him on November 16, 2011. Hougardy wanted to ask about the car's precise location on the night it was damaged, Krikor's reasons for visiting that area, whether the alarm was activated, and if Krikor heard anything unusual. The meeting was cancelled.

---

[1] Because more than one party shares the last name Karamanoukian, they will be referred to individually by their first names for ease of reference.

On November 16, 2011, Insurer received a letter from attorney Eric Bryan Seuthe on behalf of the Karamanoukians. Seuthe wrote that "any request for a statement of my client" was being deferred. When a claim representative for Insurer contacted Seuthe to obtain a signed authorization for an accident reconstruction expert to inspect the vehicle, Seuthe said Insurer was acting in bad faith and demanded a letter confirming the reason for the investigation. As a result of the conversation, Insurer transferred responsibility for the claim to litigation adjuster Nathan Cox.

Cox told Seuthe that Insurer needed additional statements from the Karamanoukians to obtain detailed information about the loss. Seuthe stated there would be "no additional statements given, period," and he would be filing a bad faith claim immediately. On November 18, 2011, Cox sent a reservation of rights letter to Seuthe, requiring, among other things, a supplemental in-person statement from Krikor and an in-person statement from Alber. Cox had learned Krikor drove the Mercedes to the shop, and the damage appeared inconsistent with vandalism. Cox wanted to clarify these topics with the Karamanoukians during their meetings.

On November 22, 2011, Seuthe wrote a letter to Cox requesting a copy of the statement that Wong took from Krikor. Cox declined to provide a copy and promised to give one after Insurer made a decision about coverage. Seuthe requested a copy again on November 27, 2011, threatening to institute bad faith litigation. Cox refused.

On December 13, 2011, Cox sent a letter to Seuthe stating: "Due to your expressed position that you will not allow your clients to cooperate with the requested statement, we will be referring this claim over to our attorney, Teresa Starinieri, in order to have an Examination Under Oath completed." On December 19, 2011, Starinieri wrote to Seuthe that she had been retained to take the EUOs. She noted that EUOs were a prerequisite to coverage under the insurance policy and cited *Brizuela v. CalFarm Ins. Co.* (2004) 116 Cal.App.4th 578 (*Brizuela*). Starinieri and Seuthe spoke by telephone and Seuthe refused to produce the Karamanoukians for EUOs.

**Karamanoukian I**

On December 19, 2011, the Karamanoukians filed their first complaint against Insurer asserting four causes of action: (1) breach of good faith and fair dealing; (2) fraud; (3) intentional misrepresentation; and (4) negligent misrepresentation. The general allegations of the complaint stated that Insurer refused to "properly and timely [pay] benefits under the policy." "That pursuant to the subject policy, payment for damages due to acts of vandalism was due and owed to the plaintiffs. [¶] [Insurer] refused payment to plaintiff due under the plaintiffs' motor insurance policy. [¶] [Insurer] delayed and refused to provide the basis for their denial of coverage or any offers of money. [¶] [In] handling, investigating and adjusting plaintiffs' claims arising out of the October 31, 2011 accident, [Insurer] systematically, methodically and generally engaged in improper, unfair and unreasonable claim practices, including, but not limited to unreasonably and unjustifiably failing to timely and fully pay plaintiffs' claims under the subject policy of plaintiffs." The cause of action for breach of good faith and fair dealing similarly alleged that Insurer breached its duty of good faith and fair dealing by failing to pay benefits to the Karamanoukians. The complaint sought general and special damages, costs of suit, interest and punitive damages. It did not seek a declaration of rights and obligations under the policy.

Insurer filed a motion for summary judgment on March 1, 2012, which the Karamanoukians opposed. During discovery, the Karamanoukians demanded production of Insurer's entire claim file. Insurer produced the file, including the transcript of the recorded statement. Subsequently, on May 29, 2012, attorney Seuthe wrote a letter stating that since Insurer had provided the transcript, the Karamanoukians would provide EUOs. He noted that the complaint did not contain a cause of action for breach of contract because the claim had not been denied. Insurer replied that the Karamanoukians had forfeited coverage by refusing to give EUOs and it was too late to offer to comply.

A hearing was held on June 12, 2012. The trial court granted the motion for summary judgment on procedural and substantive grounds. The court noted that

4

*Brizuela, supra,* 116 Cal.App.4th 578, was dispositive, and the Karamanoukians had not addressed the second, third, or fourth causes of action. The court entered an order granting summary judgment in favor of Insurer and a judgment of dismissal on June 28, 2012. The Karamanoukians filed a timely notice of appeal. This appellate court found Insurer was not required to provide a transcript of Krikor's recorded statement and the request for EUOs was reasonable under the circumstances of the case. The Karamanoukians failure to comply with the policy requirement prevented their recovery of benefits under the policy. The judgment was affirmed.

In letters dated October 14 and 20, 2013, attorney Seuthe again offered to Insurer that the Karamanoukians were willing to have EUOs taken. Insurer responded on November 19, 2013, that when the Karamanoukians refused to appear for EUOs and filed their action for insurance bad faith, they forfeited their coverage and Insurer closed the claim.

## Karamanoukian II

On October 29, 2013, the Karamanoukians filed a complaint against the Insurer for breach of contract based on the same insurance claim. They alleged that they fulfilled all of their obligations under the policy, including agreeing to provide additional information, and Insurer failed to pay for the damage to the car.

Insurer filed a motion for summary judgment on the ground that the cause of action had no merit as a matter of law and was barred by the claim preclusion doctrine. The Karamanoukians opposed the motion. A hearing was held on September 4, 2014, although no reporter's transcript or minute order has been made part of the record on appeal. The trial court granted the motion. The court entered a judgment against the Karamanoukians and in favor of Insurer on September 30, 2014. The Karamanoukians filed a timely notice of appeal.

5

## DISCUSSION

### Standard of Review

"The standard for deciding a summary judgment motion is well-established, as is the standard of review on appeal. '[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law . . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.] 'We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.' [Citation.]" (*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 572.)

### Claim Preclusion

The Karamanoukians contend the cause of action in the instant case involves a different primary right than the prior action. Specifically, they contend the issue in the first action was Insurer's refusal to provide Krikor's recorded statement, while the issue in the instant action was Insurer's refusal to take EUOs after the Karamanoukians offered to provide them. This analysis is incorrect. Both actions concern Insurer's failure to pay the claim for damages to the vehicle. In both actions, the Karamanoukians alleged they were excused from compliance with the requirement to provide EUOs and entitled to payment of the claim.

The doctrine of res judicata encompasses both claim preclusion and issue preclusion. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823-824.) Claim preclusion bars "claims that were, or should have been, advanced in a previous suit

6

involving the same parties." (*Id.* at p. 824.) Issue preclusion, also known as collateral estoppel, bars "relitigating issues that were argued and decided in the first suit." (*Ibid.*) "To avoid future confusion, we will follow the example of other courts and use the terms 'claim preclusion' to describe the primary aspect of the res judicata doctrine and 'issue preclusion' to encompass the notion of collateral estoppel. [Citation.] It is important to distinguish these two types of preclusion because they have different requirements." (*Ibid.*)

"*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*DKN Holdings LLC v. Faerber*, *supra*, 61 Cal.4th at p. 824.)

"*Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.] Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action. [Citation.] There is a limit to the reach of issue preclusion, however. In accordance with due process, it can be asserted only against a party to the first lawsuit, or one in privity with a party. [Citation.]" (*DKN Holdings LLC v. Faerber*, *supra*, 61 Cal.4th at p. 824.)

Under the claim preclusion doctrine, "'a valid, final judgment on the merits is a bar to a subsequent action by parties or their privies on the same cause of action . . . . In California, a "cause of action" is defined by the "primary right" theory. "The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." . . . In particular, the primary right theory provides that a cause of action consists of (1) a primary right possessed by the plaintiff, (2) a corresponding duty devolving upon the defendant, and (3) a delict or wrong done by the defendant which consists of a breach of the primary right . . . . "'If the matter was within the scope of the action, related to the subject matter and relevant to the

7

issues, so that it *could* have been raised, the judgment is conclusive on it. . . . The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable . . . .'"" [Citation.]" (*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 575-576 (*Villacres*).)

"'The fact that different forms of relief are sought in the two lawsuits is irrelevant, for if the rule were otherwise, "litigation finally would end only when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background." . . . "[U]nder what circumstances is a matter to be deemed decided by the prior judgment? Obviously, if it is actually raised by proper pleadings and treated as an issue in the cause, it is conclusively determined by the first judgment. But the rule goes further. If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged . . . . '. . . [A]n issue may not be thus split into pieces. If it has been determined in a former action, it is binding notwithstanding the parties litigant may have omitted to urge for or against it matters which, if urged, would have produced an opposite result . . . .'"" [Citation.]" (*Villacres, supra,* 189 Cal.App.4th at p. 576.)

""""In California the phrase 'cause of action' is often used indiscriminately . . . to mean *counts* which state [according to different legal theories] the same cause of action . . . ." . . . But for purposes of applying the doctrine of res judicata, the phrase "cause of action" has a more precise meaning: The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced . . . . "[T]he 'cause of action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant . . . . Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. 'Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though [the

8

plaintiff] presents a different *legal* ground for relief.' . . ." Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right.' [Citation.]" (*Villacres, supra,* 189 Cal.App.4th at pp. 576-577.)

"'As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered . . . . It must therefore be distinguished from the *legal theory* on which liability for that injury is premised: "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." . . . The primary right must also be distinguished from the *remedy* sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other."' [Citations.]" (*Villacres, supra,* 189 Cal.App.4th at p. 577.)

"The doctrine is applicable 'if (1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the *same cause of action* as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding.' [Citation.] '[R]es judicata will not be applied "if injustice would result or if the public interest requires that relitigation not be foreclosed."' [Citation.]" (*Villacres, supra,* 189 Cal.App.4th at p. 577.)

"The gravamen of a claim for breach of the covenant of good faith and fair dealing, which sounds in both contract and tort, is the insurer's refusal, without proper cause, to compensate the insured for a loss covered by the policy. [Citations.]" (*Brizuela, supra,* 116 Cal.App.4th at p. 592.) "An insured's compliance with a policy requirement to submit to an examination under oath is a prerequisite to the right to receive benefits under the policy. [Citation.]" (*Id.* at p. 587.) "[C]ompliance with the policy requirement for an examination under oath is a condition precedent to any claim, and the refusal to submit to such an examination causes a forfeiture of any rights under the policy. [Citations.]" (*Id.* at p. 590.)

The Karamanoukians' complaint in their first action sought damages for the unpaid vandalism claim. They alleged they were excused from providing EUOs and entitled to payment of their claim. The complaint did not seek a declaration of the rights and obligations under the policy. The gravamen of the action was to obtain payment of damages for their claim. Although the Karamanoukians did not allege a cause of action for breach of contract for failure to pay the claim, it was encompassed within the scope of the action. The insurance policy at issue required the Karamanoukians to provide EUOs. When they refused to provide them, they forfeited their rights to payment of the claim under the policy. The Karamanoukians' second action seeks damages for the same unpaid insurance claim, which was determined to have been forfeited in the first action based on their refusal to provide EUOs. The trial court properly concluded that the second action was barred by the claim preclusion doctrine.

**DISPOSITION**

The judgment is affirmed. Respondent United Financial Casualty Company is awarded its costs on appeal.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.

BAKER, J.

10