[No. B065655. Second Dist., Div. Three. May 7, 1992.]

GLOBE INDEMNITY COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MICHAEL GUARNIERI et al., Real Parties in Interest.

COUNSEL

Neumeyer & Boyd, Richard A. Neumeyer and Lydia E. Hachmeister for Petitioner.

No appearance for Respondent.

Kenneth W. Thompson for Real Parties in Interest.

## Opinion

**THE COURT.**[*]—Globe Indemnity Company (Globe) seeks a writ directing the respondent court to vacate an order denying Globe's motion for summary judgment or summary adjudication of issues and to enter in its place an order granting the motion. After our initial review of the petition, we issued a notice pursuant to *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626 [681 P.2d 893], and requested opposition. We hold that as a matter of law Globe's delay in processing the claim at issue here was reasonable in that plaintiffs failed to timely provide the information required under the terms of the insurance policy. Accordingly, the petition is granted.

### Background

Globe issued an insurance policy which provided uninsured motorist coverage to plaintiffs Michael Guarnieri and Roberta Guarnieri. The policy included coverage for Aimee Guarnieri (Aimee), who was 16 years old at the time of the accident which gave rise to this lawsuit. On April 14, 1990, Aimee was injured while riding as a passenger on the back of a stolen motorcycle which was involved in a high-speed police chase. The accident was first reported to Globe on April 23, 1990. Because the policy excluded coverage if the insured was "[u]sing a vehicle without a reasonable belief that that person is entitled to do so," Globe reserved decision on coverage and began an investigation to determine whether Aimee was using the motorcycle "without a reasonable belief" that she was entitled to do so.

On May 23, 1990, a letter to plaintiffs from Globe requesting information about the accident was returned with a handwritten message: " 'Please contact my lawyer directly.' " In June, Globe contacted plaintiffs' counsel and requested that Globe be allowed to take a sworn statement from Aimee. Plaintiffs' counsel did not respond. In August, Globe's investigator scheduled a deposition for Aimee. Plaintiffs' counsel cancelled the deposition. In October, Globe's counsel contacted plaintiffs' counsel and again requested a sworn statement from Aimee and scheduled a shorthand reporter for November 20, 1990. At the appointed time, all parties appeared but plaintiffs' counsel refused to allow Aimee to submit to examination under oath as

---

[*]Before Klein, P. J., Croskey, J., and Hinz, J.

required under the terms of the insurance policy. On advice of counsel, Aimee agreed to make a statement which could be recorded by longhand but continued to refuse to make a sworn statement before a reporter.

On March 20, 1991, plaintiffs filed this action alleging tortious breach of insurance contract and breach of the duty of good faith and fair dealing. For the next four months, Globe continued the attempt to get a sworn statement from Aimee and to obtain medical information. Plaintiffs' counsel continued to assert that Aimee need not be examined under oath and refused to provide Aimee's statement taken before a reporter.

In May 1991, Globe served notice of deposition of Aimee and her parents. Plaintiffs' counsel responded that neither he nor his clients would appear. Globe's counsel contacted plaintiffs' counsel and attempted to schedule deposition dates. Plaintiffs finally appeared for deposition on October 16, 1991. When Aimee testified during the deposition that she did not know the motorcycle was stolen, Globe through its representative present at the deposition immediately acknowledged coverage.

In a motion for summary judgment or alternatively for summary adjudication, Globe contended it had a right to information about the accident and Aimee's knowledge or lack of knowledge about the ownership of the motorcycle before acknowledging coverage of the accident; and that, as a matter of law, the efforts to obtain such information pursuant to the terms of the insurance policy cannot provide a basis for a bad faith action. The respondent court denied Globe's motion for summary judgment or summary adjudication of issues without stating a reason.[1] This petition followed.

DISCUSSION

## I. *Pertinent Provisions of the Policy*

The policy sets forth the duties of the insured after an accident as follows:

"B.   A person seeking any coverage must:

"1.   Cooperate with us in the investigation, settlement or defense of any claim or suit.

---

[1]Code of Civil Procedure section 437c, subdivisions (f) and (g) require the court, upon denial of a motion for summary judgment, to specifically refer to the evidence which indicates the existence of a triable issue and to record its determination by court reporter or written order. Failure to comply with section 437c is in itself sufficient to require that a writ be issued. (*Gonzales* v. *Superior Court* (1987) 189 Cal.App.3d 1542, 1546 [235 Cal.Rptr. 106]; *Young* v. *Superior Court* (1986) 179 Cal.App.3d 28, 32-33 [224 Cal.Rptr. 405].) Because we have decided the issues as a matter of law, remanding this matter for compliance with section 437c would serve no useful purpose.

"2.  Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

"3.  Submit, as often as we reasonably require:

a.  to physical exams by physicians we select. We will pay for these exams.

b.  *to examination under oath and subscribe the same.*

"4.  Authorize us to obtain:

a.  medical reports; and

b.  other pertinent records.

"5.  Submit a proof of loss when required by us." (Italics added.)

## II.  *Plaintiffs' Case*

The complaint contains only vague general allegations relating to the bad faith claim, i.e., "[m]isrepresenting to plaintiffs pertinent facts or insurance policy provisions," "[f]ailure to promptly investigate and process this claim," and "knowingly relying upon inappropriate policy provisions." In opposition to Globe's motion for summary judgment or summary adjudication of issues, plaintiffs' counsel asserted that the basis of the bad faith action is not Globe's efforts "to require [Aimee's] sworn statement before a shorthand reporter" but the failure to admit coverage during the time period in which plaintiffs failed to provide the information necessary to process the claim. In other words, plaintiffs refused to provide the information necessary to allow Globe to process the claim then asserted a cause of action for bad faith based on the resulting delay in processing the claim.

## III.  *Applicable Law*

In asserting there was no duty to provide the examination under oath required by the insurance policy, plaintiffs rely solely on *McCormick* v. *Sentinel Life Ins. Co.* (1984) 153 Cal.App.3d 1030 [200 Cal.Rptr. 732], in which the insurer denied a claim for disability benefits because the insured's doctor had inadvertently omitted the dates of treatment from a claim form. *McCormick* held there were triable issues of fact as to whether the dates were necessary to determine coverage in view of the substantial evidence of disability and whether the insurer breached the covenant of good faith and fair dealing by failing to obtain the relevant dates through a telephone call to

the insured's doctor. (*Id.* at pp. 1047-1048.) The insurer in *McCormick* failed to conduct any investigation whatsoever even though the information was readily available from the insured's doctor. (*Ibid.*)

*McCormick* is irrelevant to the circumstances of this case in that determination of coverage depended upon whether or not Aimee was using the motorcycle "without a reasonable belief that [she was] entitled to do so." The only source of information about whether Aimee knew the motorcycle was stolen was Aimee herself. Thus, Aimee's sworn statement was necessary to allow Globe's representative to make a determination as to whether plaintiffs are entitled to coverage under the terms of the policy. Globe's repeated efforts to obtain the information necessary to determine the coverage issue was frustrated by plaintiffs' refusal to submit to examination pursuant to the terms of the insurance policy. The entire bad faith action boils down to the dispute about whether or not Aimee was required to submit to "examination under oath" as specifically set forth in the insurance policy.

The terms of the policy require the insured to "[s]ubmit, as often as we reasonably require . . . to examination under oath and subscribe the same." Words in a contract are interpreted in their ordinary and popular sense. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].) ■ "Examination" is defined as "(examination of the witness by counsel) [i]nvestigation, questioning, probing, probe, scrutiny, inquiry," in Statsky, West's Legal Thesaurus/Dictionary (West, 1986) at page 291. The word is commonly understood to mean interrogation with questions and answers. An examination by counsel is normally recorded by shorthand reporter, not by longhand as asserted by plaintiffs' counsel.

In *Hickman* v. *London Assurance Corp.* (1920) 184 Cal. 524 [195 P. 45, 18 A.L.R. 742], our Supreme Court expressly approved an insurer's requirement that the insured submit to examination under oath: " 'As the facts with respect to the amount and circumstances of a loss are almost entirely within the sole knowledge of the insured, . . . it is necessary that it have some means of cross-examining, as it were, upon the written statement and proofs of the insured, for the purpose of getting at the exact facts before paying the sum claimed of it. Such considerations justify the provision . . . requiring the insured as often as demanded to submit to an examination under oath touching all matters material to the adjustment of the loss, and provisions of that character are held to be reasonable and valid.' " (*Id.* at pp. 529-530.) *Hickman* continued: " 'There may be logic in plaintiff's argument that defendant was not conducting the examination in good faith, but the fact still remains that defendant was acting within the terms of an expressed stipulation found in the policy, which gave it the right to demand such an examination, and it is not for the insured to inquire into the motive actuating the

company in exacting the examination, but on his part to comply therewith and to answer all material questions, notwithstanding he may believe that the principal object of the company is to find some loophole whereby it might evade payment of the policy.' " (*Id.* at p. 530.) ▇ The rationale of *Hickman* is applicable here, for only Aimee could testify about whether or not she knew the motorcycle was stolen.

In *West* v. *State Farm Fire and Cas. Co.* (9th Cir. 1989) 868 F.2d 348, the insured refused to answer questions before a court reporter because he had previously given an informal statement. Applying California law, the *West* court held the insurer's request that its insured submit to examination under oath was entirely reasonable and affirmed the granting of summary judgment to the insurer holding the insurer could not properly process the claim until the insured complied with the terms of the policy. (*Id.* at p. 351.) The policy language in *West* is identical to the language in the policy at issue here.

IV. *Analysis*

The right to require the insured to submit to an examination under oath concerning all proper subjects of inquiry is reasonable as a matter of law. ▇ The contractual duty to pay policy proceeds did not arise until plaintiffs provided the information necessary to allow Globe to determine whether the accident on the stolen motorcycle was covered under the terms of the policy. An insurer has a duty to act fairly and in good faith in discharging its contractual responsibility to the insured and may not unreasonably withhold payments due under the policy. (*Delos* v. *Farmers Group, Inc.* (1979) 93 Cal.App.3d 642, 650 [155 Cal.Rptr. 843]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 575 [108 Cal.Rptr. 480, 510 P.2d 1032].) There can be no "unreasonable delay" until the insurer receives adequate information to process the claim and reach an agreement with the insureds. Globe did not receive adequate information to process the claim until after Aimee submitted to examination under oath pursuant to the terms of the insurance policy. Plaintiffs concede that Globe did not act in bad faith after that time. Globe's delay in processing the claim was caused solely by plaintiffs' failure to provide information about Aimee's knowledge or lack of knowledge that the motorcycle was stolen.

CONCLUSION

Reasonable minds cannot differ in determining that Globe's delay in acknowledging the claim was caused by the refusal of plaintiffs, under advice of counsel, to allow Aimee to submit to "examination under oath" as required by the terms of the insurance policy. In view of the fact coverage

depended entirely upon whether or not Aimee was "[u]sing a vehicle without a reasonable belief that [she was] entitled to do so," Globe's delay in acknowledging coverage was reasonable as a matter of law.

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of March 5, 1992, denying Globe's motion for summary judgment and summary adjudication and to enter in its place an order in accord with the views expressed herein.