[No. B169994. Second Dist., Div. Four. Jan. 23, 2004.]

CALIFORNIA FAIR PLAN ASSOCIATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BARBARA KRAMAR DARWISH, Real Party in Interest.

## Counsel

Lewis, Brisbois, Bisgaard & Smith, Richard B. Wolf, Elise D. Klein and Raul L. Martinez for Petitioner.

No appearance for Respondent.

Ezer, Williamson & Brown and Mitchel J. Ezer for Real Party in Interest.

## Opinion

**HASTINGS, J.**—Defendant California Fair Plan Association (Fair Plan) seeks a peremptory writ of mandate directing respondent trial court to vacate its order denying Fair Plan's motion for summary judgment and to enter a new order granting summary judgment. Real party in interest Barbara Darwish, as trustee of a trust holding real estate, sued Fair Plan to recover vandalism loss to the property under an insurance policy issued to a third party to whom Darwish had assigned a one-tenth of one percent ownership interest. We issued an alternative writ requiring respondent court to either grant summary judgment or alternatively show cause why a peremptory writ of mandate should not issue, and we temporarily stayed all trial court proceedings until further order. We conclude that the failure of the named

insured to submit to an examination under oath, pursuant to the policy terms, barred the action against Fair Plan. Accordingly, we grant the peremptory writ of mandate.

## FACTS

Plaintiff Darwish is the trustee of a trust which holds real property. She unsuccessfully applied for an insurance policy to cover the trust's real estate. Darwish was advised that Fair Plan, a fire and vandalism insurance carrier, would not insure real property owned by a trust. Thus, she assigned one-tenth of one percent interest in the property to Maurice Rivera, who then applied for coverage without telling Fair Plan he was an assignee and owned only a small portion of the property. Fair Plan issued to Rivera the insurance policy requested.

The property suffered a vandalism loss and Rivera filed a claim. Fair Plan asked Rivera to attend an examination under oath as required by the policy and to produce documents and records to adjust the claim. He failed to comply. Thereafter, Darwish, as trustee, sued Fair Plan and sought to recover for the vandalism loss.

Fair Plan demurred to Darwish's first amended complaint on the ground that Darwish lacked standing to sue because she and the trust were not insureds under the policy. The trial court sustained the demurrer with leave to amend to allege that Rivera had assigned his rights to Darwish. Darwish then obtained an assignment of the policy from Rivera and filed a second amended complaint based on the assignment.

Fair Plan moved for summary judgment on four grounds: (1) that Darwish is not entitled to payment because Rivera failed to submit to an examination under oath and thus never established a right to payment; (2) that Darwish's action is barred by the policy's one-year suit limitation; (3) that her action is barred because Rivera "failed to comply with policy provisions and thus did not establish a right to bring suit"; and (4) that Darwish lacked standing to maintain her suit because Rivera's purported assignment of his Fair Plan policy was invalid.

The trial court denied the motion concluding Fair Plan failed to show it was prejudiced by any delay in Rivera submitting to an examination under oath. It also determined that Rivera could recover the entire vandalism loss despite his minuscule ownership interest and thus the assignment did not subject Fair Plan to any greater risk had Rivera not assigned his policy rights. This petition followed.

## DISCUSSION

Our order granting the alternative writ requested that respondent show cause "why a peremptory writ of mandate . . . should not issue on the ground the failure of a named insured to submit to examination under oath concerning a first-party loss claim under the policy negates the duty of the insurer to pay on the claim and thus bars a suit to compel such payment, without a showing of resulting prejudice by the insurer, because submission to examination is a condition precedent to the duty to pay on the claim." We cited four cases, *Hickman v. London Assurance Corp.* (1920) 184 Cal. 524 [195 P. 45], *Globe Indemnity Co. v. Superior Court* (1992) 6 Cal.App.4th 725 [8 Cal.Rptr.2d 251], *Robinson v. National Auto. etc. Ins. Co.* (1955) 132 Cal.App.2d 709 [282 P.2d 930] and *West v. State Farm Fire and Cas. Co.* (9th Cir. 1989) 868 F.2d 348.

*Hickman* concerned an insured's lawsuit to recover for fire loss on multiple insurers' policies. (*Hickman v. London Assurance Corp., supra*, 184 Cal. at p. 525.) The insured and his employee were charged with arson as a result of the fire, but the charges against the insured were eventually dismissed. The employee was convicted of arson. (*Id.* at pp. 526–527.) The insurance policies provided that " 'the insured . . . shall submit to examination under oath. . . . No suit or action on this policy for the recovery of any claim shall be sustained until full compliance by the insured with all of the foregoing requirements.' " (*Id.* at p. 527.) Insurers made a written demand that the insured submit to examination while the arson charge was still pending. Although the insured appeared at the examination, he refused to answer questions on advice of counsel. Instead, he offered to submit to examination after the conclusion of the criminal case, and if appellants' or their designated adjuster would cause the arson charged to be dismissed, the insured offered to submit to examination any time. (*Id.* at pp. 527–528.) The trial court entered a judgment for the insured. (*Id.* at p. 525.)

The California Supreme Court reversed the judgment. (*Hickman v. London Assurance Corp., supra*, 184 Cal. at p. 534.) Because the demand for examination was made pursuant to the insurance policies, insurers "had the right to demand compliance by [insured] 'as often as required,' and the performance . . . was a condition precedent to any right of action." (*Id.* at p. 532.) The court determined that since the insured was in default after dismissal of the arson charge, insurers were under no duty to reopen their demand for examination. (*Id.* at pp. 533–534.)

In *Globe Indemnity Co.,* insureds Michael and Roberta Guarnieri sued their insurer for bad faith. (*Globe Indemnity Co. v. Superior Court, supra,* 6 Cal.App.4th at p. 728.) They made a claim pursuant to their uninsured motorist coverage after their daughter was injured

while riding as a passenger on a stolen motorcycle involved in a high-speed police chase. (*Id.* at p. 727.) The policy excluded coverage for use of a vehicle without a reasonable belief that the person was entitled to do so. The insurer investigated the circumstances surrounding use of the motorcycle by the insureds' daughter. The insureds and their attorney did not cooperate with the insurer's attempts to question the daughter. (*Id.* at pp. 727–728.) Eventually, a few months after the insureds' suit was filed, the daughter appeared for deposition. Upon her testimony that she did not know the motorcycle was stolen, insurer acknowledged coverage. (*Id.* at p. 728.) It then moved for summary judgment or summary adjudication, and the trial court denied the motion. (*Ibid.*)

The insurer successfully petitioned for a writ of mandate directing the trial court to vacate its order denying summary judgment or summary adjudication of issues. (*Globe Indemnity Co. v. Superior Court, supra,* 6 Cal.App.4th at p. 727.) As a matter of law, the insurer's "delay in processing the claim at issue . . . was reasonable in that plaintiffs failed to timely provide the information required under the terms of the insurance policy." (*Ibid.*) The policy at issue required a person seeking insurance coverage to cooperate with the insurer " 'in the investigation, settlement or defense of any claim or suit.' " (*Id.* at p. 728.) It required the insured to " '[s]ubmit, as often as we [the insurer] reasonably require . . . to examination under oath and subscribe the same.' " (*Id.* at p. 729.) "The right to require the insured to submit to an examination under oath concerning all proper subjects of inquiry is reasonable as a matter of law. The contractual duty to pay policy proceeds did not arise until plaintiffs provided the information necessary to allow [insurer] to determine whether the accident . . . was covered under the terms of the policy. . . . There can be no 'unreasonable delay' until the insurer receives adequate information to process the claim and reach an agreement with the insureds. [Insurer] did not receive adequate information to process the claim until after Aimee submitted to examination under oath pursuant to the terms of the insurance policy." (*Globe Indemnity Co. v. Superior Court, supra,* 6 Cal.App.4th at p. 731.)

The plaintiff insured in *Robinson* sued her insurer for recovery of a personal property theft claim. She claimed that over $5,000 in jewelry and other items were stolen. (*Robinson v. National Automobile and Casualty Insurance Co., supra,* 132 Cal.App.2d at p. 710.) The policy provided that, at insurer's request, " '*the insured and every claimant hereunder shall submit to examination by the company,* . . . under oath if required, and produce for the [insured] company's examination all pertinent records, all at such reasonable times and places as the company shall designate, and shall cooperate with the company in all matters pertaining to loss or claims with respect thereto.' " (*Id.* at pp. 712–713, italics added by *Robinson.*) It also stated: " 'No action shall lie against the company unless, as a condition precedent thereto, there

shall have been full compliance with all the terms of the policy.' " (*Id.* at p. 713.) Pursuant to the policy, the insured was examined under oath, "at which time plaintiff was asked various questions which she refused to answer." (*Ibid.*) Defendant asserted the affirmative defense that the insured refused to cooperate with defendant as required by the policy. (*Id.* at pp. 710–711.) The trial court granted nonsuit and a judgment thereon in favor of defendant. (*Id.* at p. 710.)

The appellate court upheld the judgment against the insured. (*Robinson v. National Auto. etc. Ins. Co., supra*, 132 Cal.App.2d at p. 716.) The record demonstrated that many of the items that the insured claimed in 1953 were stolen had been acquired before she filed for bankruptcy in 1952, yet her bankruptcy petition did not list any jewelry, and it listed her total assets as $500. (*Id.* at p. 713.) At trial, the insured refused to answer questions regarding her claimed jewelry, and she refused to answer the question whether she truthfully disclosed all her assets in the bankruptcy proceedings. (*Id.* at pp. 713–714.) The appellate court concluded: "it can hardly be said that plaintiff complied with the 'cooperation' clause of her contract." (*Id.* at p. 714, 282 P.2d 930.) "In accepting the policy plaintiff made the warranties therein contained and a breach of warranty, where it is broken in its inception, prevents the policy from attaching to the risk [citation]." (*Ibid.*) "[T]he refusal of the insured to answer material questions at an examination under oath (provided for in the policy), shows a failure to give to the insurer that degree of cooperation required by the provisions of the policy here under consideration, and is a violation of the agreement of the insured to submit to such examination under oath." (*Id.* at p. 716.)

The fourth case we cited is *West v. State Farm Fire and Cas. Co.* There the insured sued the insurer for bad-faith refusal to pay a residential theft loss claim which was rejected because the insured did not submit to an examination as required by the insurance policy. (*West v. State Farm Fire and Cas. Co., supra*, 868 F.2d at p. 349.) "The district court granted summary judgment after determining that [insured's] insurance policy contained, as a condition precedent to the duty of State Farm to pay any claim and to [insured's] ability to bring this lawsuit, a requirement that [insured], his spouse, and members of his household submit to examinations under oath upon reasonable request by defendant." (*Ibid.*) At a preliminary interview of the insured by a claim representative of the insurer, the insured said he would provide documentation to substantiate his loss, but he did not do so. Consequently, pursuant to the policy, the insurer requested that the insured submit to an examination under oath. After he refused to cooperate, the insurer unsuccessfully sought to interview the insured's wife and two teenaged daughters. (*Ibid.*) The district court determined that the insurer's actions were reasonable as a matter of law. (*Id.* at p. 351.)

The Ninth Circuit Court of Appeals upheld the summary judgment. (*West v. State Farm Fire and Cas. Co., supra,* 868 F.2d at p. 352.) On appeal, the insured argued that reasonableness is always a question of fact precluding summary judgment. (*Id.* at p. 350.) "[R]easonableness becomes a question of law appropriate for determination on motion for summary judgment when only one conclusion about the conduct's reasonableness is possible." (*Id.* at p. 351.) "[I]n view of the fact that [insured] had not yet submitted to any statement under oath, and had not submitted any documentation, [insurer's] request that [insured] submit to a sworn examination was entirely reasonable. Given the lack of information provided by [insured] at this examination, it was also reasonable for [insurer] to request statements from [insured's spouse] and from their daughters. [Insurer] had the right under the policy to seek substantiation of [insured's] claim. Since no information was forthcoming from him, under the terms of the policy [insurer] legitimately could request substantiation from other members of his household." (*Ibid.*)

Darwish argues that *Hickman* must be read with *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032]. In *Gruenberg* the plaintiff appealed from a judgment of dismissal entered after defendants' demurrers to plaintiff's complaint were sustained with leave to amend, and the plaintiff did not amend his complaint. (*Id.* at p. 569.) The plaintiff sued three insurance companies, as well as others, for bad-faith refusal to cover a fire loss claim. Upon being informed of the fire, defendant-insurers hired defendant-investigator. A claims adjuster employed by defendant-investigator told a fire department arson investigator that the plaintiff had excessive insurance coverage. A few days later, the plaintiff was charged with arson and defrauding an insurer, and a preliminary hearing was set. Meanwhile defendant-insurers, through their counsel and pursuant to their policies, demanded that the plaintiff submit to an examination under oath on a date prior to the preliminary hearing. The plaintiff requested waiver of the examination requirement until the criminal case concluded, but insurers' counsel denied the request and warned that failure to appear for the examination would void coverage under the policies. After the criminal charges were dismissed, the plaintiff's attorney advised insurers that the plaintiff was now available for an examination. Insurers continued to deny coverage. (*Id.* at pp. 570–571.)

At issue in *Gruenberg* was the insurer's duty "to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy." (*Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d at p. 573.) "In the case at bench plaintiff has alleged in essence that defendants willfully and maliciously entered into a scheme to deprive him of the benefits of the fire policies in that they encouraged criminal charges by falsely implying that he had a motive to commit arson, and in that, knowing plaintiff would not appear for an examination during the pendency of criminal charges against him, they used his failure to appear as a

pretense for denying liability under the policies. We conclude therefore that . . . the complaint . . . does allege in substance a breach on the part of defendant insurance companies of their duty of good faith and fair dealing which they owed plaintiff." (*Id.* at p. 575, fn. omitted.) The Supreme Court accordingly overturned the judgment and directed the trial court to overrule insurers' demurrers on remand. (*Id.* at p. 581.)

Although *Gruenberg* held that an insurer's duty of good faith and fair dealing is absolute, "unconditional and independent of the performance of plaintiff's contractual obligations," the court added: "At the same time, we do not say that the parties cannot define, by the terms of the contract, their respective obligations and duties. We say merely that no matter how those duties are stated, the nonperformance by one party of its contractual duties cannot excuse a breach of the duty of good faith and fair dealing by the other party while the contract between them is in effect and not rescinded." (*Id.* at p. 578.)

The dissent in *Gruenberg* opined that unless *Hickman* is overruled, the insured in *Gruenberg* did not state a cause of action for breach of contract. (*Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d at p. 581.) As the dissent pointed out, it is significant that the California Legislature, through Insurance Code section 2071, set forth the terms of a standard fire insurance policy in California.[1] Unlike policies drafted by insurers, which had been subject to "adhesion" rules of construction generally favoring insureds (*Cal-Farm Ins. Co. v. TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 572–573 [218 Cal.Rptr. 407]; see also *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253]), fire policies are subject to ordinary rules of construction. (*Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d at p. 582.) The dissent noted that while the insured was in a sensitive position, having been charged with crimes, *Hickman* held that a plaintiff suing his insurer cannot invoke his constitutional right against self-incrimination to ignore or postpone his contractual duty to submit to an examination by an insurer. (*Gruenberg,* at pp. 587–588.)

---

[1] Insurance Code section 2071 provides: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with." The statute also provides that "[t]he insured, as often as may be reasonably required . . . , shall . . . submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as may be reasonably required, shall produce for examinations all books of account, bills, invoices, and other vouchers, or certified copies thereof if the originals be lost, at any reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made."

Unlike the complaint in *Gruenberg*, this case does not involve allegations that the insurer rejected an insured's claim based on trumped up charges by the insurer. Here, there is no evidence in the record that the lack of cooperation in submitting to an examination under oath was due to any statements or conduct by Fair Plan or any of its agents.

Without citation to any evidence in the record, Darwish maintains that the only reason Fair Plan "sought Examinations Under Oath is because of the variance between the named insureds (Darwish's assignees) and the entities controlled by Darwish which held title to the insured properties." She quotes from the following excerpt from 13 Couch on Insurance (3d ed. 1999), section 196:27, page 196-36:[2] "Where compliance with an insurer's request for examination under oath is a condition precedent to recovery, the insured's failure to comply, in the absence of a reasonable excuse, breaches the policy and forfeits his or her right to recovery under the policy, and is a defense to an action on the policy." (Fns. omitted.) Focusing on the words "in the absence of a reasonable excuse," Darwish suggests that she had a reasonable excuse for not having Rivera submit to an examination under oath—reliance on Darwish's former attorney. Assuming this would amount to a reasonable excuse, Darwish also fails to cite to any portion of the record establishing her reliance, a violation of California Rules of Court, rule 14(a)(1)(C).

Subdivision (c) of Code of Civil Procedure section 437c requires the granting of a summary judgment motion "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In support of Fair Plan's motion for summary judgment, Fair Plan filed a separate statement of facts, which essentially was not disputed by Darwish. The evidence in support of the separate statement of facts was as follows: Rivera filed a property claim with Fair Plan; Fair Plan's insurance adjusters requested Rivera to provide documentation to show he had an insurable interest in the subject property, but Rivera did not respond; Fair Plan's attorney mailed two written requests for Rivera to submit to an examination under oath, as required by Fair Plan's insurance policy; not receiving any response, Fair Plan's attorney sent a third letter to Rivera warning that failure to submit to the examination would result in denial of his claim; still not receiving a response from Rivera, Fair Plan's attorney mailed Rivera a fourth letter notifying him that his claim was denied.

---

[2] Both we, in our alternative writ, and Darwish have incorrectly cited section 196:27 as having been published in 2003, when in fact the section was published in 1999. The 2003 supplement does not contain section 196:27.

Darwish's separate statement of undisputed material facts in opposition to Fair Plan's motion did not refute the evidence that Rivera refused to submit to an examination under oath. Nor did · Darwish's declaration, nor her attorney's declaration, both filed in opposition to Fair Plan's summary judgment motion, refute that Rivera failed to submit to an examination under oath.

■ An examination under oath being a condition precedent to suit on the policy, the trial court erred in denying summary judgment to Fair Plan.

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of August 22, 2003, denying Fair Plan's motion for summary judgment and summary adjudication and to enter in its place a new order granting summary judgment. Each party to bear their own costs.

Epstein, Acting P. J., and Curry, J., concurred.