**Pedro RIVERA; Aracely Rivera,**
**Plaintiffs—Appellants,**

v.

**ALLSTATE INSURANCE COMPANY,**
**Defendant—Appellee.**

No. 02–17167.
D.C. No. CV–01–03000–WHA.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 2003.

Decided May 25, 2004.

———

Robert F. Campbell, Esq., Oakland, CA, for Plaintiffs–Appellants.

Cynthia L. Mellema, Peter R. Soares, Letitia R. Todd, Sonnenschein, Nath & Rosenthal, San Francisco, CA, for Defendant–Appellee.

Before HAWKINS, PAEZ, and BERZON, Circuit Judges.

## MEMORANDUM *

In this insurance coverage dispute, Pedro and Aracely Rivera allege that Allstate unreasonably, and in bad faith, denied payment of their claim for water damage to their home. Allstate denied coverage of the claim, citing the Riveras' failure to comply with the cooperation provision in their homeowner's insurance policy. The Riveras brought suit for breach of contract, bad faith and punitive damages. The district court granted summary judgment to Allstate on all claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, and reverse and remand in part.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

We review *de novo* the district court's summary judgment ruling. *See United States v. City of Tacoma, Wash.,* 332 F.3d 574, 578 (9th Cir.2003). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *See Suzuki Motor Corp. v. Consumers Union, Inc.,* 330 F.3d 1110, 1131 (9th Cir.2003). Both parties agree California law governs this dispute.[1]

## I.

The district court erred in granting summary judgment to Allstate on the Riveras' breach of contract claim. The district court held that the Riveras breached the cooperation clause in two ways: (1) the Riveras never submitted a "signed proof of loss"; and (2) although Allstate requested that the Riveras give a recorded statement, the Riveras refused to do so.

### A. Proof of Loss

The district court determined that no reasonable jury could find that the "Pedro & Aracely Rivera" written at the top of the proof of loss form was Aracely Rivera's signature.

Although the signature line at the bottom of the form is blank, Aracely Rivera testified that she signed the document near the top, where someone handwrote "Pedro & Aracely Rivera." Moreover, Bessie Miranda, the notary public, testified that when Aracely came into her office to have the document notarized, "Pedro" was already filled in on the top line. Miranda further testified that Aracely then signed her name next to where "Pedro" was already written, thus making the complete signature "Pedro & Aracely Rivera." Mi-

---

1. Because the parties are familiar with the facts, we recite them only as necessary to explain our decision.

randa mentioned to Mrs. Rivera that documents are usually signed at the bottom, but Mrs. Rivera told her that "it was requested to be at the top, her name." Aracely testified at her deposition that she would not re-sign the document "because I feel that it is signed. That is my signature." The depositions of Mrs. Rivera and Miranda create a genuine issue of material fact as to whether the Riveras submitted a signed proof of loss.[2]

## B. Recorded Statement

■ The district court also relied on the fact that the Riveras never appeared for a recorded statement to conclude that the Riveras failed to comply with the terms of the policy. The undisputed evidence showed that Allstate sent eight letters informing the Riveras of the need for a recorded statement and then two more letters specifically requesting their appearance. However, taking the facts in the light most favorable to the Riveras, as we must, there is evidence of cooperation throughout the process.

With regard to the first eight letters, each stated that only when Ms. Sullivan had all the requisite information (*i.e.* the proof of loss and other documentation) would Allstate schedule the recorded statement. The last two letters were more demanding.

Nonetheless, a genuine issue of material fact exists as to the Riveras' alleged noncooperation in appearing for a recorded statement. Pedro Rivera placed a call to Sullivan on March 21, 2001 and asked her to call him back, which he thought was a sufficient response to her letter of March 21, 2001, which he received after he made the phone call, asking him to contact her.

Pedro Rivera additionally stated in his declaration that he did not receive Sullivan's March 29, 2001 letter. On May 2, 2001, Pedro Rivera sent Sullivan a letter that stated, in part, that if Allstate had any more requests for information it should let him know. Viewing the evidence in the light most favorable to Pedro Rivera, he received only one letter informing him that he needed to schedule an oral examination (the March 21, 2001 letter), and he reasonably believed his phone call the day before was a sufficient response to that letter. A month later Pedro Rivera sent Sullivan a letter stating that he believed he had completed all of Allstate's requirements, only to receive a letter from Allstate denying coverage several days later.

The cases cited by the district court in support of its ruling do not require judgment in favor of Allstate. These cases are distinguishable because they all involved a *complete* failure to cooperate, whereas here there is some evidence of cooperation by the Riveras. *See Hickman v. London Assurance Corp.*, 184 Cal. 524, 527–28, 195 P. 45 (1920) (holding that insurer was entitled to summary judgment because Hickman, as a result of his invocation of his Fifth Amendment rights, breached the cooperation provision when he refused to answer *any* questions by the insurer or to produce *any* documents in connection with the investigation of the claim); *West v. State Farm Fire and Cas. Co.*, 868 F.2d 348, 349 (9th Cir.1989) (upholding grant of summary judgment for insurer because West unequivocally refused to answer any questions in an examination under oath or provide any documentation for the claim and all of his family members refused to submit to an examination under oath).[3]

---

**2.** We also note that to the extent Allstate was concerned that the Riveras "be bound" by the proof of loss, Mrs. Rivera's deposition testimony that the handwriting at the top of the form was her signature is sufficient to bind her to the representations on the form.

**3.** The district court also referenced *Globe Indemnity Co. v. Superior Court of Los Angeles, 6*

After oral argument, counsel for Allstate drew our attention to the recent case of *California Fair Plan Ass'n v. Superior Court of Los Angeles County*, 115 Cal. App.4th 158, 8 Cal.Rptr.3d 746 (2004). *Fair Plan* does not change our analysis. *Fair Plan* notes the possibility that a "reasonable excuse" may suffice to preclude summary judgment on the basis of the insured's failure to give a recorded statement. *Id.* at 167, 8 Cal.Rptr.3d 746. Moreover, as in all the previously discussed cases, *Fair Plan* involved a complete failure to cooperate. *Id.* at 166–67, 8 Cal.Rptr.3d 746.

Taking the evidence in the light most favorable to the Riveras, we conclude that there are genuine triable issues as to whether they breached the cooperation provision: the Riveras submitted a proof of loss that is arguably signed; they submitted authorization to Allstate to check any of their records; and there is evidence of correspondence, letters and phone calls that suggests the Riveras did not simply ignore the ten letters sent by Allstate over an eight-month period before Allstate denied coverage. Accordingly, we reverse the district court's summary judgment ruling on this claim.

## II.

■ We agree with the district court, however, that Allstate was entitled to summary judgment on the Riveras' claim for bad faith denial of policy benefits. Here, Allstate acted reasonably in insisting on compliance with the cooperation provision in light of its concern that the Riveras had submitted a fraudulent claim. *See Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1166 (9th Cir.1995) (emphasizing that the sole inquiry under bad faith claim is whether the insurer acted reasonably). Until Allstate completed its investigation, it could not determine the extent of its liability. In this context, Allstate acted reasonably in delaying payment until it completed its investigation. *See Blake v. Aetna Life Ins. Co.*, 99 Cal.App.3d 901, 921–23, 160 Cal. Rptr. 528 (1979). The Riveras' response that, in fact, insisting on parts of the cooperation provision was "a mere pretense" because Allstate already had enough information to settle the claim by May 4, 2001 misses the essential thrust of Allstate's actions: its need to conduct a thorough investigation to rule out the possibility of fraud. Until verification and documentation for the loss was submitted, Allstate could not determine the extent of its liability, if any.[4]

■ Because the district court correctly granted summary judgment to Allstate on the Riveras' underlying tort claim for bad faith denial of policy benefits, the Riveras' claim for punitive damages must similarly fail. *See, e.g., Arntz Contracting Co. v. St.*

---

Cal.App.4th 725, 8 Cal.Rptr.2d 251 (1992). However, *Globe* solely concerned the issue of bad faith; once the insured submitted to an examination under oath, the insurer immediately granted coverage under the policy. Breach of contract was thus not at issue. *Id.* at 728, 8 Cal.Rptr.2d 251 ("*Globe* through its representative present at the deposition immediately acknowledged coverage").

4. Additionally, as noted by Allstate, even if an insurer's decision to deny coverage is ultimately found to be wrong, no bad faith can be found if the insurer acted reasonably. *See,*

*e.g., Franceschi v. Amer. Motorists, Ins. Co.*, 852 F.2d 1217, 1220 (9th Cir.1988) (upholding summary judgment granting coverage but denying claim for bad faith). Here, before Allstate denied the claim it had knowledge of the following: the Riveras submitted a proof of loss seven months after it was due with a blank signature line; the Riveras had not responded to Allstate's request that they sign the proof; the Riveras had not appeared for a recorded statement; and Allstate had written a total of ten letters over eight months requesting information.

*Paul Fire and Marine Ins. Co.,* 47 Cal. App.4th 464, 492, 54 Cal.Rptr.2d 888 (1996).

## IV.

The district court's ruling granting summary judgment on the claims of bad faith and punitive damages is AFFIRMED. The ruling granting summary judgment on the breach of contract claim is REVERSED and REMANDED. Each side to bear their costs on appeal.