Filed 11/27/23  Snyder v. Fire Insurance Exchange CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PAMELA SNYDER, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> FIRE INSURANCE EXCHANGE, <br><br>     Defendant and Respondent. | A165392 <br><br> (San Francisco City & County <br>   Super. Ct. No. CGC-17-561625) |

Plaintiff Pamela Snyder sued her insurance company, defendant Fire Insurance Exchange (FIE), regarding its handling of claims she submitted under two policies.  FIE moved successfully for summary judgment on the basis that she failed to submit to an examination under oath.  On appeal, Snyder raises various grounds for why she was excused from submitting to such an examination.  We disagree and affirm the judgment.[1]

---

[1] On October 11, 2023, FIE filed an unopposed motion to strike Snyder's declaration in support of her reply brief.  We grant the request because Snyder has failed to seek leave to augment the record (see Cal. Rules of Court, rule 8.155) or otherwise demonstrate the materials are properly part of the record on appeal.  (See *Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 [appellate courts " 'ignore arguments, authority, and facts not presented and litigated in the trial court.  Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived.' "].)

# I. BACKGROUND

## A. Factual Background

Snyder owned a four-unit building, in which she claimed to use unit 1 as her residence and rented the remaining units. She also utilized unit 1 to store construction materials for ongoing renovation work to unit 1 as well as other units.

A water leak in upstairs unit 3 resulted in water filling the ceiling/floor space between units 3 and 1, ultimately destroying much of the ceiling of unit 1, including moldings and medallions. The water also damaged unit 1's walls and the basement/garage ceiling below unit 1.

Snyder submitted a claim to FIE under her dwelling fire policy. The dwelling fire policy provided coverage for dwelling, personal property, fair rental value, and additional living expense coverage for certain water-damage losses. One of the requirements for coverage is for the policy holder to "submit to examination under oath and subscribe the same."

FIE subsequently retained a company to provide remediation services for the water damage. Portions of the ceiling, walls, and subfloor were removed to facilitate drying and abate mold growth, and high-powered fans were placed in the unit to facilitate the drying process. FIE subsequently provided Snyder with a claims payment of $6,614.01 and requested certain documentation. FIE also denied coverage for losses associated with boxes stored in unit 1 because "they were not usual to the occupancy of the dwelling." It also denied coverage for various business records as expressly excluded from coverage.

Snyder disputed these coverage denials as well as the amount of FIE's payments. In response, FIE stated it "is not in a position at this time to make a determination as to whether additional payments are owed on this

2

claim as further investigation is needed." FIE informed Snyder it "is exercising its right under the policy to take your examination under oath [(EUO)]," and asked her to contact them to schedule the examination.

In response, Snyder stated: "Re: your demand to depose me, you will limit such an invasion to policy and claim issues only and not a means to question me regarding when I last had sex, with whom, was I ever a prize fighter, or any other broad based privacy invading questions as you state you perceive you've a right to ask: 'questions regarding your background[.]' [¶] In any case, you will not be deposing me prior to my obtaining legal advice to protect myself from MY INSUSURANCE COMPANY'S ARMY OF ATTACKERS/ADVERSARIES, et al, hired to collaborate and formulate means to avoid my valid claims I assure you of that." (Boldface omitted.)

FIE again asked Snyder to submit to an EUO, stating, "[T]his is not a deposition. Your examination under oath is being requested pursuant to your policy as set forth in my . . . preceding emails and correspondence. As I explained to you . . . , you have a right to an attorney at this proceeding at your own expense. Please contact my assistant . . . to schedule a mutually convenient date for this proceeding." In response, Snyder alleged FIE was acting unreasonably and in bad faith.

FIE denied these allegations and stated: "FIE stands by the position previously asserted to the effect a request for a further inspection and your examination under oath i[s] reasonable in that these requests are being made so FIE can make a coverage determination. We are again requesting your cooperation in this regard. If we do not hear from you regarding scheduling a date for the inspection and a date for your examination under oath within a reasonable amount of time, FIE will make a coverage determination based on the investigation completed to date."

FIE subsequently denied any further coverage under the dwelling fire policy.

Six months later, Snyder filed a personal property claim under her renter's policy. FIE requested additional detail and repair estimates. Snyder asserts she was unable to provide estimates because the contents in unit 1— which she was unable to remove without FIE's permission in order to maintain coverage—prevented access to the structure. FIE again made two additional requests to Snyder for an EUO. Snyder did not submit to an EUO, and FIE denied any additional coverage for failure to cooperate.

## B. Procedural Background

Snyder filed a complaint against FIE alleging breach of contract and breach of the implied covenant of good faith and fair dealing. She alleged FIE unreasonably denied coverage for various damages under her dwelling fire policy and renter's policy. She further alleged FIE engaged in various improper conduct, including unreasonably withholding payments, improperly interpreting policy provisions, misrepresenting facts, failing to conduct an adequate investigation of the building loss, and failing to obtain a proper repair estimate.

FIE subsequently filed a motion for summary judgment. FIE argued Snyder was obligated to submit to an EUO under both the terms of her policy and the California Insurance Code, FIE made such a request on multiple occasions, and Snyder failed to submit to an EUO. FIE asserted submitting to an EUO was a condition precedent for any claim payment, and Snyder's failure to do so constituted an "*absolute defense*" to her claims. FIE submitted correspondence indicating they requested Snyder to submit to an EUO on April 16, 2015, with follow-up reminders/explanations on April 21 and 27, 2015, March 18, 2016, April 5 and 26, 2016, and May 16, 2016, In

4

two subsequent letters, FIE explained it had denied and closed Snyder's claims based on her failure to comply with the policy terms, including "fail[ing] to submit to an examination under oath despite our prior requests that you do so."

Snyder opposed the summary judgment motion. She asserted a triable issue of fact existed regarding whether she was excused from scheduling an EUO based on FIE's conduct. She further argued the EUOs related to the personal property claim under the dwelling fire policy, and thus should not impact the dwelling causes of action.

The trial court granted the motion. The court noted the "[c]ore facts are undisputed" in that the parties agreed submitting to an EUO is a condition precedent to filing suit, and Snyder failed to submit to a requested EUO. The court noted Snyder's objections to the EUO did not excuse her obligation to appear, but were issues she could have raised at the EUO.

The court entered judgment in FIE's favor, and Snyder timely appealed.

## II. DISCUSSION

On appeal, Snyder asserts the trial court erred in granting summary judgment because triable issues of material fact existed regarding whether she failed to satisfy her obligation to submit to an EUO. She further contends the trial court abused its discretion in striking her claim for punitive damages and by denying her motion for reconsideration of its order declining to reopen discovery.

### A. Summary Judgment

Snyder raises three arguments regarding the EUO: (1) FIE's demand for an EUO was not reasonable or made in good faith; (2) FIE is either estopped from asserting the EUO requirement or waived the requirement;

5

and (3) she did not refuse to submit to an EUO.  We do not find any of these arguments meritorious.

### 1.  Standard of Review

A summary judgment motion " ' "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ' " (*Thimon v. City of Newark* (2020) 44 Cal.App.5th 745, 755.)  A defendant moving for summary judgment must present evidence that either "conclusively negate[s] an element of the plaintiff's cause of action" or "show[s] that the plaintiff does not possess, and cannot reasonably obtain," evidence needed to establish at least one element of the claim.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853–854.)  If the defendant meets this burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto."  (Code Civ. Proc., § 437c, subd. (p)(2).)

"We review the record de novo, 'liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.' " (*Staats v. Vintner's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 832.)

### 2.  Request for an Examination Under Oath

" 'The right to require the insured to submit to an examination under oath concerning all proper subjects of inquiry is reasonable as a matter of law.' " (*California Fair Plan Assn. v. Superior Court* (2004) 115 Cal.App.4th 158, 162.)  Moreover, "[a]n insured's compliance with a policy requirement to submit to an examination under oath is a prerequisite to the right to receive benefits under the policy." (*Brizuela v. CalFarm Ins. Co.* (2004) 116 Cal.App.4th 578, 587 (*Brizuela*).)

6

Here, the parties do not dispute that Snyder's policies with FIE contained a requirement that she submit to an EUO upon request, FIE requested Snyder submit to an EUO,[2] and Snyder did not attend or participate in an EUO. Rather, Snyder argues FIE's request for an EUO was unreasonable and made in bad faith, FIE is estopped from enforcing the EUO condition, FIE waived the EUO condition, and she did not resist participating in an EUO.

First, Snyder relies on *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269 (*Tomaselli*) to assert an insurance company's EUO request without a suspicion of fraud may create fact issues regarding whether the company was acting in bad faith. However, *Tomaselli* does not support Snyder's position. In *Tomaselli*, the appellate court affirmed the jury verdict in favor of the insureds on their bad faith claim. (*Id.* at p. 1282.) It noted numerous facts supported the jury verdict, including misleading information provided by the adjuster to the insureds about the EUO, the insurer's reliance on an endorsement without providing policyholders with proper notification of the coverage changes, and the insurer's reliance on an endorsement the insureds claimed to have not received without taking steps

---

[2] In her reply brief, Snyder argues FIE did not, in fact, request she submit to an EUO because it did not set a specific date and her counsel of record—who was only retained sporadically for limited purposes—did not receive such a request. These claims contradict her response to FIE's separate statement, in which she did not dispute the fact that FIE requested she submit to an EUO on multiple occasions. We thus decline to consider her new arguments. (See *Expansion Pointe Properties Limited Partnership v. Procopio, Cory, Hargreaves & Savitch, LLP* (2007) 152 Cal.App.4th 42, 54 [" 'An argument or theory will . . . not be considered if it is raised for the first time on appeal. [Citation.] Specifically, in reviewing a summary judgment, the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal.' "].)

to confirm it actually had been sent to the insureds. (*Id.* at pp. 1281–1282.) While the court noted "EUO's are ordinarily administered to investigate fraudulent claims," the court did not address whether the insurer reasonably or unreasonably requested an EUO or conclude that an insurer's use of an EUO must be exclusively limited to fraud cases. (*Id.* at p. 1281.)

Unlike in *Tomaselli* where the adjuster misrepresented the purpose of the EUO and dissuaded the insureds from retaining an attorney, Snyder has not identified any evidence of bad faith underlying FIE's EUO request. To the contrary, the record indicates FIE's request for an EUO was reasonable. The record indicates FIE informed Snyder it needed additional information to evaluate her claim, including evidence that the unit had previously been rented, evidence that she was living in the unit while it was being renovated, further details regarding the personal property damages as a result of the water and whether that property was " 'usual to the occupancy' " and thus covered under the policy, and information regarding what steps she took to minimize damage after the loss. Nothing in the record indicates such information was ever provided to FIE. The only reasonable inference to be drawn from these facts is that FIE's demand that Snyder submit to an EUO was reasonable.

Next, Snyder contends FIE either was estopped from enforcing the EUO requirement or waived such a requirement. Snyder contends FIE's statement that it would "make a coverage determination based upon the investigation completed to date" led her to believe the EUO was optional. As FIE correctly notes, these arguments were not raised in the trial court and new legal theories cannot be decided in this appeal.[3] " 'Generally, the rules

---

[3] These arguments differ from Snyder's arguments before the trial court. There, she asserted she did not submit to an EUO because she "was being set up for denial" by FIE giving her "impossible tasks: submit

relating to the scope of appellate review apply to appellate review of summary judgments. [Citation.] An argument or theory will . . . not be considered if it is raised for the first time on appeal. [Citation.] Specifically, in reviewing a summary judgment, the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal. [Citation.]' . . . 'A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' " (*Expansion Pointe Properties Limited Partnership v. Procopio, Cory, Hargreaves & Savitch, LLP*, *supra*, 152 Cal.App.4th at pp. 54–55.)

Finally, Snyder contends the policy is ambiguous about which party is responsible for scheduling the EUO. On this point, we find *Brizuela*, *supra*, 116 Cal.App.4th 578 instructive.

In that matter, the insured, Brizuela, filed a claim arising from fire damage. (*Brizuela*, *supra*, 116 Cal.App.4th at p. 582.) His insurer sought to schedule an examination under oath as provided by the policy, and it requested Brizuela provide certain documents and confirm an examination date. (*Id.* at p. 583.) In response, Brizuela requested copies of recorded statements he and his wife made to the insurer after filing the claim. (*Ibid.*) While the insurer continued to request proposed dates for the EUO, Brizuela "never proposed a date for the examination ever, and no examination under oath occurred." (*Id.* at pp. 584–585.) The insurer denied the claim, and Brizuela sued for breach of contract and bad faith. (*Id.* at p. 585.) The trial

---

completed Proof of Loss forms without being given the forms, and remove your personal property from Unit 1 without drying it," and "give testimony on the contents of her boxes when there wasn't enough room for her to open and inventory them." She did not raise any arguments or submit any evidence regarding her now-claimed belief that the EUO was optional.

court concluded the EUO requested by the insurer "was a condition precedent to obtaining benefits under the policy" and granted the insurer's motion for summary judgment. (*Id.* at pp. 585–586.)

The appellate court rejected Brizuela's argument that he never "refused" to submit to an EUO. (*Brizuela, supra*, 116 Cal.App.4th at p. 588.) The court explained, "After Brizuela failed to comply with [the insurer's] initial demand for an examination under oath, it became incumbent upon him to fulfill the requirement of being examined 'by offering to submit to such an examination at a later time.' [Citation.] . . . Although [the insurer] reiterated its demand numerous times thereafter by asking Brizuela to provide dates for the examination, Brizuela failed to do so." (*Ibid.*) The appellate court also rejected Brizuela's assertion that the EUO demand was unreasonable, noting Brizuela did not identify any basis to excuse his attendance at an EUO, he did not object to scheduling an EUO at the time of the requests, and he neither submitted nor agreed to submit to an examination on any particular date. (*Ibid.*) The court concluded, "Brizuela's failure, six months after [the insurer's] initial request for the examination, to propose any dates for an examination, to respond in a timely manner to [the insurer's] proposed dates, and to submit to an examination constituted a refusal to submit to examination under oath." (*Id.* at p. 589.) It thus affirmed the judgment, holding "[b]oth the terms of the policy and the relevant case authority make clear that a claim for policy benefits may be denied as a consequence of failing to submit to a policy condition for examination under oath." (*Id.* at pp. 590, 595.)

Here, as in *Brizuela*, FIE made repeated requests to Snyder to schedule an EUO. At no point did Snyder propose potential dates in response to these inquiries or submit to an EUO. Nor did she identify any obstacle to her

10

ability to participate in an EUO.  While she now suggests her medical needs made participating in an EUO challenging, she never asserted such an objection at the time of FIE's requests.  Once Snyder received FIE's request to schedule an EUO, "it became incumbent upon [her] to fulfill the requirement of being examined 'by offering to submit to such an examination.' " (See *Brizuela*, *supra*, 116 Cal.App.4th at p. 588.)  Accordingly, Snyder's obligation to submit to an EUO was not ambiguous.

## B.  *Motion to Reconsider*

Next, Snyder contends the trial court abused its discretion in denying her motion to reconsider its order denying her motion to reopen discovery.  She asserts the parties were moving toward settlement and FIE deceived her into believing discovery was unnecessary.

### 1.  **Relevant Background**

In May 2018, FIE served form interrogatories, special interrogatories, and requests for production on Snyder.  Snyder did not respond to these discovery requests.  Snyder stated the parties both expressed an interest in attempting to reach an early settlement, and her settlement counsel "requested an open extension of time for the discovery responses."

In August 2018, FIE's counsel continued to express an interest in settlement, but stated, "I do need to proceed with discovery, and will be filing a motion with the court to compel the responses."

In September 2018, FIE filed a motion to compel responses and sought sanctions.  Snyder informed FIE's counsel she finished obtaining subcontractor bids, suggested they begin settlement discussions, and requested the motion to compel be withdrawn and FIE postpone its discovery.  The record does not indicate any agreement to these requests.

11

Snyder subsequently opposed the motion to compel. She asserted it interfered with the parties' attempts at an early settlement and noted all communications regarding her claims are in FIE's possession.

The court granted FIE's motion to compel and ordered Snyder to serve responses within 30 days. However, the court denied the request for sanctions based on Snyder's "apparent good faith belief that an early settlement process would obviate the need for discovery." As part of its order, the court cautioned Snyder "that she must comply with the Code of Civil Procedure absent an express agreement with [FIE] to waive its requirements."

In late November 2018, Snyder produced the documents requested by FIE. A site inspection of the property occurred in early December 2018. No written responses were provided.

In mid-December 2018, the parties submitted a stipulated application to continue the trial date for approximately three months, which was granted by the court.

In January 2019, FIE's counsel reminded Snyder that "discovery responses remain long overdue, the court's discovery order has been ignored . . . , and I do want to clarify that we expect that the litigation aspect of this case needs to proceed, regardless of whether or not we are able to make headway on settlement."

In April 2019, the parties again stipulated to continue the trial date due to an unexpected delay in obtaining the construction estimating expert's analysis. They requested an approximate four-month extension and stipulated that current discovery deadlines would be extended to track the new trial date. The court again granted this request.

12

In May 2019, FIE's counsel provided Snyder with an update on the stipulation and stated, "[N]ow we should move forward ASAP towards attempting resolution. . . . Of course, keep in mind that if we're unable to get the matter resolved through mediation, I will still need the discovery responses the court ordered."

In July 2019, FIE's counsel again noted, "[O]n the chance that the judicial mediation does not resolve the case, I am going to need to get the discovery responses which are still owed from you pretty soon after that. Given that the trial date would be approaching pretty quickly, I intend to notice a motion for sanctions at some point in late August, which I would be open to taking off calendar assuming you provide substantive discovery responses before that hearing."

In early August 2019 and prior to the parties' mediation, FIE filed a motion for evidence, issue, and terminating sanctions against Snyder, with a hearing set for early September. FIE asserted it had sought discovery responses, as ordered by the court in October 2018, "but to date not a single response has been provided. This is so even though [counsel] recently advised plaintiff that her continued failure to abide by the court's order would result in FIE's being required to file this motion."

Snyder opposed the motion, asserting she had been in ongoing discussions with FIE regarding her claim and had produced over a thousand pages of documents. She further stated she had been seriously ill due to a "pelvic infection" that required surgery, ongoing postsurgery pain, and a newly diagnosed skin disease, which prevented her from fully litigating the matter. She noted she would be seeking to continue the trial date due to these medical issues, and requested the court deny the motion or defer its ruling.

13

In response, FIE stated Snyder had never previously stated any illness prevented her from responding to discovery, she allegedly had attorneys ready to represent her, and her medical issues did not inhibit her from preparing a mediation brief and an opposition to the current motion.

The trial court continued the hearing for supplemental briefing. However, the court advised Snyder "that the prospect of settlement . . . in no way affects . . . her obligations as a litigant to respond under oath in writing to written discovery requests." The court noted Snyder "is presently in violation of her obligations as a litigant and is in violation of the Court's [prior discovery order]." However, the court was unable assess appropriate sanctions because FIE had not submitted the discovery at issue.

As requested by the court, FIE subsequently submitted the form and special interrogatories and requests for production previously served on Snyder.

Snyder submitted a supplemental declaration emphasizing her medical condition due to "multiple abdominal abscesses," her subsequent surgery, and her ongoing recovery. She asserted she "do[es] not have the mental or physical capability to handle the demands and stresses of litigation, magnified by an impending trial date. . . . Relief from this litigation would reduce the stress that is another impediment to [her] recovery . . . ." She filed a request to continue the trial date based on her medical issues.

The trial court subsequently granted FIE's motion in part. The court issued monetary sanctions against Snyder but denied further sanctions without prejudice. It noted FIE could renew its request for further sanctions if Snyder fails to respond to the written discovery by October 15 or within 45 days from the date of the order if the trial is continued for over two months. The court noted failure to comply with this order would result in Snyder's

14

request for punitive damages to be automatically stricken from the complaint. The court subsequently granted a 10-month continuance of the trial date to August 2020, but denied the request to reopen discovery.

Snyder sought reconsideration of the trial court's order denying her request to reopen discovery. The court denied this request as untimely.

## 2. Analysis

Snyder's arguments fail to address the basis for the trial court's order—namely, timeliness. Code of Civil Procedure section 1008, subdivision (a), requires a party to file a motion for reconsideration "within 10 days after service upon the party of written notice of entry of the order." Here, the court denied Snyder's request to reopen discovery on October 10, 2019. FIE served this order on Snyder and her attorney of record on October 11. Snyder did not file her motion for reconsideration until October 30—19 days after being served with the order. Accordingly, the trial court correctly denied her motion as untimely.

Nor has Snyder demonstrated the court abused its discretion in denying her motion to reopen discovery. (See *Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 531 [motion to reopen discovery subject to abuse of discretion standard of review].) While she claims FIE suggested discovery was unnecessary, the record demonstrates otherwise. Likewise, FIE never agreed to her request to postpone discovery. To the contrary, since at least August 2018, FIE emphasized the need to proceed with discovery, stating, "I do need to proceed with discovery, and will be filing a motion with the court to compel the responses." Between September 2018 and July 2019, FIE moved to compel discovery, which was granted by the court, and continued to remind Snyder of her discovery obligations. Nothing in this record suggests FIE was misleading Snyder into believing discovery

15

was unnecessary. The record demonstrates FIE actively pursued discovery while also engaging in settlement discussions. Moreover, we note that at the time the court denied Snyder's motion to reopen discovery, the trial date had been continued for seven months—from March 2019 to October 2019—with discovery deadlines extended to track the new trial date. Accordingly, Snyder had sufficient time to pursue discovery, and any failure to do so was based on her own lack of diligence. She has not demonstrated the court abused its discretion in denying her motion to reopen discovery.

## C. Discovery Sanctions

Finally, Snyder contends the trial court abused its discretion in striking her punitive damage request as a sanction for her failure to respond to discovery. We need not address this argument. Because we conclude the trial court properly granted FIE's motion for summary judgment, the status of Snyder's claim for punitive damages is irrelevant.

## III. DISPOSITION

The trial court's order granting FIE's motion for summary judgment is affirmed. FIE may recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A165392
*Snyder v. Fire Insurance Exchange*